[Nos. 80480-0; 80584-9; En Banc.]
81083-4.
Argued February 24, 2009. Decided December 24, 2009.

SATOMI OWNERS ASSOCIATION, *Respondent*, v. SATOMI, LLC, *Petitioner*.

BLAKELEY COMMONS CONDOMINIUM ASSOCIATION, *Respondent*, v. BLAKELEY COMMONS, LLC, ET AL., *Appellants*, INTRACORP REAL ESTATE, LLC, ET AL., *Respondents*.

THE PIER AT LESCHI CONDOMINIUM OWNERS ASSOCIATION, *Respondent*, v. LESCHI CORPORATION, *Appellant*.

782

784

*Stellman Keehnel* (of *DLA Piper US, LLP*); and *Kit W. Roth*, for petitioners/appellants Satomi, LLC, Blakeley Commons, LLC, and Blakeley Village, LLC.

*Betsy A. Gillaspy*, *Daniel L. Dvorkin*, and *Joel T. Salmi* (of *Salmi & Gillaspy, PLLC*), for appellant Blakeley Commons, LLC.

*Lory K. O'Tool*, *David E. Chawes*, and *Mark F. O'Donnell* (of *Preg, O'Donnel & Gillett, PLLC*), for appellant Leschi Corp.

*Marlyn K. Hawkins* and *Dean E. Martin* (of *Barker Martin, PS*), for respondent Satomi Owners Association.

*Todd K. Skoglund* and *Adil A. Siddiki* (of *Casey & Skoglund, PLLC*); and *Joseph A. Grube* (of *Ricci Grube Aita & Breneman, PLLC*), for respondent Blakeley Commons Condominium Association.

*Gregory P. Turner* (of *Lee Smart, PS*), for respondents Accurate Siding, Inc., and Professional Homebuilders, LLC.

*John Francis Kennedy* (of *Law Offices of John Francis Kennedy*) and *William S. Noel* (of *Law Offices of Kelley Sweeney*), for respondent Concrete and Steel Systems, Inc.

*William S. Clement* (of *Clement & Drotz*) and *Joanne T. Blackburn* (of *Gordon Thomas Honeywell*), for respondent Custom Aluminum, Inc.

*William S. Clement* (of *Clement & Drotz*), for respondent Dan Brown Enterprises, Inc.

*Walter J. Sinsheimer* (of *Sinsheimer & Meltzer, Inc.*) and *Steven G. Wraith* (of *Lee Smart, PS*), for respondent Edmonds Roofing Co.

*Patrick N. Rothwell* (of *Davis Rothwell Earle & Xochihua, PC*), for respondent My-Lan Co.

*John C. Dippold* (of *Carney Badley Spellman*), for respondent Snyder Roofing of Washington, LLC.

*Julie M. Nichols* on behalf of Building Industry Association of Washington, amicus curiae.

*Thomas F. Ahearne* on behalf of Master Builders Association of King and Snohomish Counties, amicus curiae.

*Bruce M. Thornton* and *John K. Butler* on behalf of Professional Warranty Service Corporation, amicus curiae.

¶1 ALEXANDER C.J. — Although these consolidated cases present several issues, the issue that is common to them all is whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, preempts the judicial enforcement provision of the Washington Condominium Act (WCA), RCW 64.34.100(2). We conclude that the WCA's judicial enforcement provision is preempted by the FAA and, accordingly, reverse in part the Court of Appeals' opinion in *Satomi Owners Ass'n v. Satomi, LLC*, 139 Wn. App. 175, 159 P.3d 460 (2007), *review granted*, 163 Wn.2d 1017 (2008). We also reverse the portion of the trial court's order that is before us in *Blakeley Commons Condominium Ass'n v. Blakeley Commons, LLC*,[1]

---

[1] In *Blakeley*, the appellant is named in the case caption as "Blakeley Commons, LLC," but it is incorporated as "Blakeley Village LLC" and operates under that name. Accordingly, the appellant is hereinafter referred to as "Blakeley Village."

as well as the trial court's order in *The Pier at Leschi Condominium Owners Ass'n v. Leschi Corp.* We remand *Blakeley* and *Leschi* to their respective trial courts for further proceedings consistent with this opinion.

## I. FACTS

### A. Satomi Owners Ass'n v. Satomi, LLC

¶2 Satomi, LLC, developed the Satomi Condominiums, an 85-unit condominium complex located in Bellevue. Satomi Clerk's Papers (SCP)[2] at 18. When the condominiums were sold by Satomi, LLC, the purchasers signed an addendum to the condominium purchase and sale agreements, entitled a "warranty addendum."[3] It contained an arbitration clause.[4]

¶3 In February 2005, Satomi Owners Association (Satomi Association) filed suit in King County Superior Court against Satomi, LLC, alleging defects in construction and construction materials and resulting damages throughout the complex. Satomi Association claimed breach of implied and express warranties under the WCA, violation of duty to disclose documentation to Satomi Association, breach of implied warranty of habitability, and violations of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. Satomi, LLC, denied the allegations and demanded arbitration based on the arbitration clause in the warranty addendum. Satomi Association filed a motion to quash the arbitration demand. Satomi, LLC, opposed Satomi Association's motion and cross-moved to compel arbitration.

---

[2] The record contains clerk's papers for *Satomi* (SCP), *Blakeley* (BCP), and *Leschi* (LCP).

[3] The record before us includes 84 of the 85 signed warranty addenda and a declaration stating that the 85th limited warranty was signed but misplaced.

[4] The arbitration clause stated in pertinent part that "all provisions of this Warranty apply to all warranties from the Seller to the Purchaser, including the implied warranties of quality under the Washington Condominium Act. . . .

". . . .

"7. *Seller's Right to Arbitration.* At the option of the Seller, Seller may require that any claim asserted by Purchaser or by the Association under this Warranty or any other claimed warranty relating to the Unit or Common Elements must be decided by arbitration . . . . The decision rendered by the arbitrator shall be final and binding without appeal or review." SCP at 167, 170.

¶4 The trial court granted Satomi Association's motion to quash Satomi, LLC's arbitration demand based on three grounds: (1) the FAA does not apply and thus does not preempt the WCA's judicial enforcement provision; (2) Satomi, LLC, did not prove that all of the individual owners agreed to arbitrate; and (3) even if the individual owners agreed to arbitrate, the arbitration clause is inapplicable to Satomi Association because it "is a legally separate corporate entity which is neither a 'successor or transferee.'" SCP at 144.

¶5 Satomi, LLC, appealed the trial court's decision to the Court of Appeals, Division One. Following oral argument but prior to the Court of Appeals' issuing its decision, the parties reached a settlement and Satomi Association moved to terminate appellate review. The Court of Appeals denied the motion and subsequently issued its opinion. *Satomi Owners Ass'n*, 139 Wn. App. at 190 n.50.

¶6 The Court of Appeals, in a divided opinion, affirmed the portion of the trial court's order denying arbitration of Satomi Association's WCA statutory warranty claims, holding that the FAA did not preempt the WCA's judicial enforcement provision because the FAA does not apply "under the circumstances here." *Id.* at 178.[5] It reversed the trial court's order with respect to the contractual and common law warranty claims, however, holding that all unit owners signed the warranty addenda and Satomi Association was bound by the arbitration clause in the warranty addendum.

¶7 Satomi, LLC, petitioned this court to review the portion of the Court of Appeals' decision holding that the WCA's judicial enforcement provision was not preempted by the FAA. In opposing review, Satomi Association as-

---

[5] In her dissent from the portion of the court's opinion holding the FAA did not apply, Judge Agid wrote, "Given the interstate nature of condominium sales and the building materials used to construct this condominium, the warranty addendum which contains the arbitration clause and covers those very materials evidences a transaction 'involving interstate commerce' within the exp[a]nsive coverage the courts have given the FAA." *Satomi Owner's Ass'n*, 139 Wn. App. at 191 (Agid, J., dissenting).

serted that if review were granted, we should reverse the portions of the Court of Appeals' opinion holding that all unit owners signed the warranty addenda and Satomi Association was bound by the arbitration clause in the warranty addendum. Department Two of this court granted review and consolidated the matter with *Blakeley* and *Leschi*.

## B. Blakeley Commons Condominium Ass'n v. Blakeley Commons, LLC

¶8 Blakeley Village developed a condominium project in Seattle consisting of 109 units—106 of the units were residential units. Twenty-nine residential units were sold to residents of other states, and one was sold to a Canadian citizen. Every purchaser of a residential unit executed a warranty addendum, which contained an arbitration clause.[6]

¶9 In January 2006, Blakeley Commons Condominium Association (Blakeley Association) filed a lawsuit in King County Superior Court against Blakeley Village and various subcontractors, based on alleged defects in workmanship and materials affecting the units, common elements, and limited common elements of Blakeley Commons. The Blakeley Association's claims against Blakeley Village were for breach of implied warranty under the WCA, breach of implied warranty of habitability, breach of fiduciary duty, violation of the CPA, and breach of contract. Its claims against subcontractors were for breach of express warranty and breach of contract. Blakeley Village moved to stay the proceedings and compel arbitration. The trial court

---

[6] The warranty addendum and arbitration clause are identical to those at issue in *Satomi*. *See supra* note 4. The record before us in *Blakeley* contains copies of the executed warranty addendum signature pages for 103 of the residential units, and a declaration stating the signature pages for residential units 101, 307, and 501 were executed at the time of sale but have since been misplaced. Blakeley Association, however, has moved this court to supplement the record with declarations by the purchasers of six units, including residential units 307 and 501 and commercial units 1B, 2A, 2B, and 3B, stating that the purchasers did not sign the warranty addendum. The motion is addressed below. *See infra* note 7.

ordered the case stayed pending resolution of the appeal in *Satomi.*

¶10 After the Court of Appeals issued its opinion in *Satomi*, Blakeley Association moved to lift the stay and deny mandatory arbitration. The trial court granted the motions and ordered the parties to agree on a new trial date, stating that "[t]he *Satomi* decision controls." Blakeley Clerk's Papers (BCP) at 740. In a subsequent order, however, the trial court clarified that its first order applied only to Blakeley Association's WCA claims. It ordered all non-WCA claims stayed pending arbitration of those claims based on "(1) the arbitration provisions in the Warranty Addendums to the Purchase and Sale Agreements entered into by the Blakeley Commons owners and (2) the holding in *Satomi Owners Association v. Satomi, LLC.*" BCP at 752 (citation omitted).

¶11 Blakeley Village filed a notice of appeal and statement of grounds for direct review by this court of the portion of the trial court's revised order that denied arbitration of Blakeley Association's WCA claims and denied a stay of those claims pending arbitration. Blakeley Association filed an answer in opposition to the request for direct review. This court granted review and consolidated the case with *Satomi* and *Leschi.*[7]

---

[7] On August 26, 2008—more than a year after the trial court issued its revised order denying arbitration of Blakeley Association's WCA claims and more than six months after this court accepted review of this case, but less than one month before oral arguments were originally scheduled in this matter—Blakeley Association moved this court to supplement the record with additional evidence on review. With its motion, Blakeley Association seeks to introduce the declarations of six original unit purchasers, two of whom purchased residential units, stating they did not sign a warranty addendum. The motion was passed to the merits. Although Blakeley Village cites RAP 9.9 and RAP 9.10 in its motion, the admission of additional evidence on review is governed by RAP 9.11. *See* Mot. to Suppl. the R. at 5; RAP 9.11. Additional evidence may be taken on review only if all six criteria set forth in RAP 9.11 are met. *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990). The evidence Blakeley Association seeks to introduce does not meet the six criteria and, accordingly, we deny the motion.

## C. The Pier at Leschi Condominium Owners Ass'n v. Leschi Corp.

¶12 The Pier at Leschi Condominium is a 28-unit conversion condominium complex located in Seattle. The building originally operated as an apartment complex until Leschi Corp. purchased it and converted the units to condominiums. Leschi Corp. sold the condominium units between November 2001 and July 2003.

¶13 A purchase and sale agreement, as well as a limited home warranty addendum to the real estate purchase and sale agreement (limited home warranty addendum), were executed between Leschi Corp. and each unit purchaser.[8] Each unit purchaser also signed a home builder's limited warranty registration form and received a limited warranty validation form.[9] The limited warranty contained arbitration provisions.[10] The arbitration provisions were incorporated by the limited home warranty addendum and the standard addendum to the purchase and sale agreement.[11]

---

[8] The record contains copies of the signed limited home warranty addendum for all units, except one that is declared to have been signed but misplaced. It also contains a declaration stating a purchase and sale agreement was executed between Leschi Corp. and each unit purchaser.

[9] A declaration in the record also states that each unit purchaser signed a home builder's limited warranty registration form and received a limited warranty validation form.

[10] The arbitration provision in the limited warranty states, "By accepting this LIMITED WARRANTY, YOU agree with US that all allegations of CONSTRUCTION DEFECTS in YOUR HOME will be handled under, and in accordance with, this LIMITED WARRANTY. Further, YOU agree with US that binding arbitration is the sole remedy for resolving disputes involving alleged CONSTRUCTION DEFECTS." LCP at 387. The limited warranty also provides, "Any disputes between YOU and US, or parties acting on OUR behalf, including PWC [(Professional Warranty Service Corporation)], related to or arising from this LIMITED WARRANTY, the construction of the HOME or the sale of the HOME will be resolved by *binding arbitration. Binding arbitration shall be the sole remedy for resolving disputes* between YOU and US, or OUR representatives." *Id.* at 392 (emphasis added).

[11] The limited home warranty addendum states in pertinent part:

"Buyer hereby acknowledges receipt and acceptance of a full and complete copy of THE PIER AT LESCHI CONDOMINIUM LIMITED HOME WARRANTY

¶14 In March 2006, The Pier at Leschi Condominium Owners Association (Leschi Association) filed a lawsuit against Leschi Corp. in King County Superior Court. It alleged breach of implied and express warranties of the WCA, misrepresentation and/or omissions in the public offering statement, violation of duty to provide documentation to the association, breach of implied warranty of habitability, violation of the CPA, breach of duty to disclose, breach of duty to repair common elements, and violations of other WCA provisions. In response, Leschi Corp. filed a motion to enforce binding arbitration of the claims and stay court proceedings pending arbitration. The motions were denied. The record before us contains no transcript of the proceedings, and the trial court did not enter any findings of fact or conclusions of law in support of its decision.

¶15 Leschi Corp. appealed the trial court's decision to the Court of Appeals, Division One. The Court of Appeals certified the case to this court pursuant to RCW 2.06.030 and RAP 4.4. Our commissioner issued an order accepting certification of the action in its entirety. Our court later consolidated this matter with *Satomi* and *Blakeley*.

## II. MOOTNESS

■ ¶16 In *Satomi*, the Court of Appeals denied Satomi Association's motion to terminate review without discussing whether the case was rendered moot by the aforementioned settlement between the parties. *Satomi*, 139 Wn. App. at 190 n.50. We hold that *Satomi* is moot because the parties have settled their dispute. *Norman v. Chelan*

DOCUMENTS, consisting of the HOME BUILDER'S LIMITED WARRANTY (PWC Form No. 117) and the LIMITED WARRANTY BUILDING STANDARDS (collectively "Limited Warranty") . . . . Buyer further acknowledges and agrees:
" . . . .
"i. That the Limited Warranty provides an Alternative Dispute Resolution process (involving mandatory and binding arbitration) to resolve all disputes involving construction quality." *Id.* at 489. The standard addendum to the purchase and sale agreement states in pertinent part, "MEDIATION/ARBITRA-TION. All disputes involving Seller, Buyer and/or Owners Association shall be resolved by the mediation/arbitration provisions of the Limited Warranty for construction issues (whether based on express or implied warranties); or the Declaration for non-construction issues." *Id.* at 358.

*County Pub. Hosp. Dist. No. 1*, 100 Wn.2d 633, 634, 673 P.2d 189 (1983) (case rendered moot by settlement among the parties).

■ ¶17 "As a general rule, this court will not review a moot case." *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (citing *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)). "However, this court may review a moot case if it presents issues of continuing and substantial public interest." *Id.* (citing *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972))). In deciding whether a case presents issues of continuing and substantial public interest,

> [t]hree factors in particular are determinative: "(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur". A fourth factor may also play a role: the "level of genuine adverseness and the quality of advocacy of the issues". Lastly, the court may consider "the likelihood that the issue will escape review because the facts of the controversy are short-lived".

*Id.* at 892 (citations omitted) (quoting *Westerman*, 125 Wn.2d at 286-87).

■ ¶18 Notwithstanding the fact that the case is moot, we choose to review the preemption question. *See infra* Part IV.A. We do so because it is one of "continuing and substantial public interest." We decline, however, to review the factual question of whether Satomi, LLC, proved that the unit owners agreed to arbitrate. *See infra* Part IV.B.1. We also decline to review the legal question of whether Satomi Association is legally bound by the alleged arbitration agreements. *See infra* Part IV.B.2. These are not questions of continuing and substantial public interest under the test set forth above and, thus, do not merit review.[12]

---

[12] A fourth issue, whether the trial court should have held a hearing on the issue of whether all individual unit owners agreed to arbitrate with Satomi, LLC, was raised by both parties in their briefing. The Court of Appeals did not, however,

## III. STANDARD OF REVIEW

¶19 This court engages in de novo review of a trial court's decision granting a motion to compel or deny arbitration. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 342, 103 P.3d 773 (2004). The trial court's determination of whether a state statute is preempted by federal law is also reviewed de novo. *Robertson v. Wash. State Liquor Control Bd.*, 102 Wn. App. 848, 853, 10 P.3d 1079 (2000) (citing *Hoddevik v. Arctic Alaska Fisheries Corp.*, 94 Wn. App. 268, 278, 970 P.2d 828, 975 P.2d 563 (1999)). "The party opposing arbitration bears the burden of showing that the agreement is not enforceable." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000); *Stein v. Geonerco, Inc.*, 105 Wn. App. 41, 48, 17 P.3d 1266 (2001)).

## IV. ANALYSIS

### A. *Preemption*

¶20 In these cases, we are asked to decide whether the FAA preempts the judicial enforcement provision of the WCA. Determination of whether the FAA preempts a state statute that otherwise applies to a transaction generally requires a two-part analysis in which we consider (1) whether the FAA applies to the transaction and, if so, (2) whether the state statute conflicts with the FAA. *See, e.g., Preston v. Ferrer*, 552 U.S. 346, 354-56, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008) (holding that the FAA applied to the transaction at issue and that the FAA preempted the state statute governing the transaction).

---

address this issue in its opinion. *See Satomi*, 139 Wn. App. 175. But, as neither party raised this question here, we decline to consider it on this appeal. RAP 13.7(b).

¶21 Section 2 of the FAA provides that

[a] written provision in any maritime transaction or a contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). "Section 2 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston*, 552 U.S. at 353 (alteration in original) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)); *see also Scott v. Cingular Wireless*, 160 Wn.2d 843, 858, 161 P.3d 1000 (2007) ("Our State also favors arbitration of disputes." (citing *Zuver*, 153 Wn.2d at 301 n.2 (citing cases))). " 'The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' " *Zuver*, 153 Wn.2d at 301 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). "Both state and federal courts must enforce this body of . . . law." *Id.* (citing *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) (citing *Southland Corp.*, 465 U.S. at 11-12); *Garmo v. Dean, Witter, Reynolds, Inc.*, 101 Wn.2d 585, 590, 681 P.2d 253 (1984)). "[T]he FAA does not require parties to arbitrate when they have not agreed to do so, . . . [i]t simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).

¶22 In considering the scope of the FAA, the United States Supreme Court has interpreted the term " 'involving commerce' " in section 2 as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Con-

gress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)). That Court has emphasized that

> [b]ecause the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of interstate commerce."
>
> . . . .
>
> . . . Congress' Commerce Clause power "may be exercised in individual cases *without showing any specific effect upon interstate commerce*" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control." *Only that general practice need bear on interstate commerce in a substantial way.*

*Id.* at 56-57 (emphasis added) (fourth alteration in original) (citations omitted) (quoting *Perry*, 482 U.S. at 490; *Allied-Bruce*, 513 U.S. at 273; *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S. Ct. 996, 92 L. Ed. 1328 (1948)). In other words, the FAA applies to transactions involving an economic activity that, in the aggregate, represent a general practice subject to federal control that bears on interstate commerce in a substantial way.[13]

¶23 In *Citizens Bank*, the United States Supreme Court held that debt-restructuring agreements executed in Alabama between an Alabama lending institution and an Alabama construction company " 'involve[s] commerce' " under the FAA "for at least three reasons" as follows: (1) the multistate scope of the business of a party to the agreement, (2) the agreement was secured by a party's goods that

---

[13] Consequently, the "substantial effects" test applied by the Court of Appeals in *Marina Cove Condominium Owners Ass'n v. Isabella Estates*, 109 Wn. App. 230, 34 P.3d 870 (2001), is invalid for purposes of determining whether the FAA applies to a transaction. *See Citizens Bank*, 539 U.S. at 58 (holding the "substantial effects" test announced by the Supreme Court of Alabama in *Sisters of the Visitation v. Cochran Plastering Co.*, 775 So. 2d 759, 761-62 (Ala. 2000), adheres to an "improperly cramped view" of the commerce clause power).

were assembled from out-of-state parts and materials, and (3) the "broad impact" of a party's industry on the national economy. *Id.* at 57, 58.

¶24 Subsequent to the United States Supreme Court's decision in *Citizens Bank*, courts in at least two states, California and Alabama, have held that the FAA applied to home construction or remodeling contracts based solely on the receipt and use of out-of-state materials. *Shepard v. Edward Mackay Enters., Inc.*, 148 Cal. App. 4th 1092, 56 Cal. Rptr. 3d 326, 332 (2007) (real estate purchase agreement between California developer and California resident; some of the home's component parts "were manufactured and/or produced outside California"); *McKay Bldg. Co. v. Juliano*, 949 So. 2d 882, 885-86 (Ala. 2006) (remodeling contract between Alabama homeowners and Alabama corporation; lumber used for framing of kitchen frequently came from outside Alabama and recessed light fixtures to be used were manufactured outside Alabama).

¶25 Where it applies to a transaction, the FAA may preempt a state statute governing the transaction by conflict preemption.[14] Conflict preemption occurs where (1) it is impossible to comply with both state and federal law or (2) state law " 'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' " *McKee v. AT&T Corp.*, 164 Wn.2d 372, 387, 191 P.3d 845 (2008) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984)). "[T]he conflict must be an actual conflict, not merely a hypothetical or potential conflict." *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009).

¶26 The FAA's displacement of conflicting state law is "now well-established." *Allied-Bruce*, 513 U.S. at 272;

---

[14] Federal preemption occurs where Congress conveys intent to preempt local law by (1) express preemption, (2) field preemption, or (3) conflict preemption. *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 667, 41 P.3d 1169 (2002) (citing *S. Pac. Transp. Co. v. Pub. Util. Comm'n*, 9 F.3d 807, 810 (9th Cir. 1993)). The FAA contains no provision of express preemption, nor does it preempt the field of arbitration. *Volt Info. Scis.*, 489 U.S. at 477. Thus, only conflict preemption is relevant here.

*Adler*, 153 Wn.2d at 344 ("[T]he FAA clearly preempts any state law to the contrary."). For instance, the FAA preempts or supersedes state laws that "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp.*, 465 U.S. at 10 (FAA preempted a state statute requiring judicial consideration of claims brought under state's franchise investment law); *see also, e.g., Perry*, 482 U.S. at 491 (FAA preempted state minimum wage law requiring a judicial forum for vindication of wage claims).

### 1. *Does the FAA Apply to the Transactions?*

¶27 To determine whether the FAA applies in the consolidated cases before us, we must first decide what constitutes the "transactions" in each case. Satomi, LLC; Blakeley Village; and Leschi Corp. (developers) argue that the transactions are the purchase and sale agreements and the warranties, as incorporated by reference. Satomi Association, Blakeley Association, and Leschi Association (associations) respond that the transactions are the warranties, alone. We agree with the developers.

¶28 If the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract. *See, e.g., Wash. Trust Bank v. Circle K Corp.*, 15 Wn. App. 89, 93, 546 P.2d 1249 (1976). In *Satomi* and *Blakeley*, the warranty addendum expressly and unequivocally states that it is an addendum to the condominium purchase and sales agreement. Similarly, in *Leschi*, the limited warranty's arbitration provisions are clearly and unequivocally incorporated into the purchase and sale agreement by two of its addenda.[15] We hold, therefore, that

---

[15] Leschi Association argues that the limited warranty, alone, is the transaction at issue because it contains a "separate and independent . . . contract" provision. *See* Br. of Resp't The Pier at Leschi Condo. Owners Ass'n at 17 (citing LCP at 386-98); *see* LCP at 394 ("This LIMITED WARRANTY is separate and independent of the contract between YOU and US for the construction

the transactions in each case include the purchase and sale agreements and the warranties, as incorporated by reference. Thus, the general practices evidenced by the transactions include both the sale and warranting of the condominiums.

¶29 We next consider whether the FAA applies to the transactions in each case. The developers assert that the transactions are within the scope of the FAA. The associations claim that the FAA does not apply. We again agree with the developers.

¶30 The United States Supreme Court has concluded that "[i]f the Commerce Clause gives Congress the power to regulate local business establishments purchasing substantial quantities of goods that have moved in interstate commerce, *Katzenbach* v. *McClung*, 379 U. S. 294, 304-305[, 85 S. Ct. 377, 13 L. Ed. 2d 290] (1964), it necessarily reaches substantial commercial loan transactions secured by such goods." *Citizens Bank*, 539 U.S. at 57. Here, by the same reasoning, we hold that the commerce clause necessarily reaches the warranting and sale of condominiums in *Satomi* because "such goods" amount to more than 70 percent of the component parts. *See* SCP at 135-37; *Shepard*, 56 Cal. Rptr. 3d at 332; *see also McKay,* 949 So. 2d at 885-86. Therefore, under the circumstances in *Satomi,* the substantial use of out-of-state materials places the transactions within the reach of the FAA. We reverse the portion of the Court of Appeals' opinion reaching the opposite conclusion. *See Satomi*, 139 Wn. App. at 188.

¶31 We also hold that under the respective circumstances of both cases, the transactions in *Blakeley* and *Leschi* "involve commerce" under the FAA. In *Blakeley*, our holding is based on (1) the use of out-of-state materials in

and/or sale of YOUR HOME. The provisions of this LIMITED WARRANTY shall in no way be restricted or expanded by anything contained in the construction and/or sales contract between YOU and US."). The terms of the provision, however, do not preclude the parties from incorporating by reference the limited warranty's arbitration provisions into the purchase and sale agreement. *See* LCP at 394. As such, the purchase and sale agreement's incorporation of the arbitration provisions does not conflict with the terms of the "separate and independent contract" provision.

constructing the condominiums that were sold and warranted, (2) a significant number of the units (30 of 109) were bought by owners from outside Washington, and (3) a significant number of the owners (29 of 109, including 22 who are Washington residents) obtained their mortgage loans from out-of-state lenders. In *Leschi*, our holding is based on (1) the use of out-of-state materials used in converting the condominiums that were warranted and sold, (2) some of the units (4 of 28) were purchased by out-of-state residents, and (3) some the unit sales (9 of 28) were financed by out-of-state lenders.

## 2. *Does the State Statute Conflict with the FAA?*

¶32 Because we conclude that the FAA applies to the transactions in each of the cases before us, we must next decide whether the WCA's judicial enforcement provision conflicts with the FAA. Two versions of the provision are at issue: the "prior" and "current" enforcement provisions.[16] In *Satomi*, the parties agree that the prior enforcement provision applies. The parties in *Leschi* agree that their dispute is subject to the current enforcement provision. Blakeley Village claims that the prior enforcement provision applies in *Blakeley*. We assume that Blakeley Village is correct in this respect but need not decide it because, as we indicate hereafter, we reach the same conclusion in our analysis of both versions of the enforcement provision.

---

[16] The prior enforcement provision was effective between July 2004 and August 2005. Former RCW 64.34.100(2) (2004) (effective July 1, 2004), *amended by* LAWS OF 2005, ch. 456, § 20 (effective Aug. 1, 2005). The current enforcement provision has been effective since August 2005. RCW 64.34.100(2) (effective Aug. 1, 2005). A third version, the "original" enforcement provision, is not at issue in these cases. From its enactment until it was first amended, the original enforcement provision stated, "Any right or obligation declared by this chapter is enforceable by judicial proceeding." Former RCW 64.34.100(2) (1989) (effective July 1, 1990), *amended by* LAWS OF 2004, ch. 201, § 2 (effective July 1, 2004).

### a. *Does the Prior Enforcement Provision Conflict with the FAA?*

¶33 Satomi, LLC, and Blakeley Village argue that the prior enforcement provision conflicts with, and thus is preempted by, the FAA. Satomi Association concedes that the provision is the type of statute that is preempted under the conflict preemption doctrine. We agree.

¶34 Between its effective dates of July 2004 and August 2005, the prior enforcement provision stated, "Except as otherwise provided in chapter 64.35 RCW, any right or obligation declared by this chapter is enforceable by judicial proceeding." Former RCW 64.34.100(2) (2004), *amended by* LAWS OF 2005, ch. 456, § 20 (effective Aug. 1, 2005).[17] The terms of the prior enforcement provision could not be varied by agreement, and the rights it conferred could not be waived. RCW 64.34.030.

¶35 Given our determination that the FAA applies to the transactions in the cases before us, we conclude that the arbitration provision in each, including the terms providing for binding arbitration, are enforceable "like other contracts, in accordance with their terms," *Volt Info. Scis.*, 489 U.S. at 478; *see* 9 U.S.C. § 2. The prior enforcement provision, however, "preserved the parties' rights to enforce the WCA provisions 'by judicial proceeding should alternative methods of dispute resolution fail.' " *Kruger Clinic Orthopaedics, LLC v. Regence BlueShield*, 157 Wn.2d 290, 305, 138 P.3d 936 (2006) (quoting *Marina Cove Condo. Owners Ass'n v. Isabella Estates*, 109 Wn. App. 230, 237, 34 P.3d 870 (2001)). It goes without saying that arbitration is not binding if a party can later seek judicial review of the matter that was submitted for arbitration. The prior en-

---

[17] Chapter 64.35 RCW is referenced in both the prior and current enforcement provisions. It does not apply to any of these cases, however, because it governs only "qualified warranties" of condominiums. *See* RCW 64.35.105(19) (defining " '[q]ualified warranty' " as "an insurance policy issued by a qualified insurer that complies with the requirements of this chapter").

forcement provision, therefore, directly conflicts with the FAA because it serves to obstruct the enforcement of the arbitration agreements.

### b. *Does the Current Enforcement Provision Conflict with the FAA?*

¶36 Leschi Corp. argues that the current enforcement provision conflicts with the FAA. Leschi Association claims in response that there is no conflict because both the current enforcement provision and the FAA provide for arbitration.

¶37 As of August 1, 2005, the current enforcement provision states:

> Except as otherwise provided in RCW 64.55.100 through 64.55.160 or chapter 64.35 RCW, any right or obligation declared by this chapter is enforceable by judicial proceeding. The arbitration proceedings provided for in RCW 64.55.100 through 64.55.160 shall be considered judicial proceedings for the purposes of this chapter.

RCW 64.34.100(2).[18] The terms of the current enforcement provision may not be varied by agreement, and the rights it confers may not be waived. RCW 64.34.030.

¶38 The current enforcement provision incorporates the arbitration proceedings provided for in RCW 64.55.100 through 64.55.160, which were adopted by the legislature in the same bill that amended the judicial enforcement provision. LAWS OF 2005, ch. 456, §§ 1-17, 20, 23. Under the arbitration proceedings provided for in RCW 64.55.100 through 64.55.160, parties must participate in private arbitration of statutory warranty claims if any party files an arbitration demand within a specified time. RCW 64.55-.100(1). Upon the conclusion of the arbitration hearing, however, any aggrieved party may demand a trial de novo in the superior court on all claims. RCW 64.55.100(4). Thus, the arbitration proceedings are nonbinding.

---

[18] *See supra* note 17 (regarding ch. 64.35 RCW).

¶39 The parties dispute whether the arbitration proceedings of RCW 64.55.110 through 64.55.160 apply to these cases. We assume that they are applicable here but need not resolve this question because our conclusion is the same whether they apply or not.[19] As noted, the FAA requires us to enforce the arbitration agreements in these cases, including the terms providing for binding arbitration. 9 U.S.C. § 2. The current enforcement provision, however, preserves the right of either party to enforce the WCA's provisions by judicial proceeding, including nonbinding arbitration pursuant to RCW 64.55.110 through 64.55.160. RCW 64.34.100(2). Subsequent review by judicial proceeding, even the nonbinding arbitration provided for in RCW 64.55.100 through 64.55.160, is contradictory to binding arbitration. Thus, we agree with Leschi Corp. that the current enforcement provision directly conflicts with the FAA because it stands as an obstacle to enforcing the terms of the arbitration agreements that provide for binding arbitration.

### 3. Conclusion Regarding Preemption

¶40 Given our determinations that the FAA applies to the transactions in each case and that the prior and current enforcement provisions directly conflict with the FAA, we hold that the FAA preempts the prior and current enforcement provisions.[20]

---

[19] If the arbitration proceedings of RCW 64.55.100 through 64.55.160 do not apply, then the applicable terms of the current judicial enforcement provision are identical to the terms of the prior judicial enforcement provision. *Compare* RCW 64.34.100(2) *with* former RCW 64.34.100(2) (2004). For the same reasons the prior enforcement provision conflicts with the FAA, *see supra* Part IV.A.2.a, so too does the current enforcement provision if the arbitration proceedings of RCW 64.55.100 through 64.55.160 do not apply.

[20] Contrary to the dissent's claim, the question before us is not whether the associations' breach of implied warranty claims under the WCA are preempted. Dissent at 820. Rather, it is merely whether one provision of the WCA—the judicial enforcement provision—is preempted by the FAA and consequently unenforceable in these consolidated cases. We have addressed that question above. The WCA implied warranty claims remain at issue in *Blakeley* and *Leschi*

B. *Are the Alleged Arbitration Agreements Enforceable against the Associations?*

¶41 We next turn to the question of whether the developers can compel the associations to arbitrate their claims pursuant to the alleged arbitration agreements between the developers and the unit owners. Our analysis of this question is necessary, however, only if, as a matter of fact, unit owners agreed to arbitrate.

1. *Did Unit Owners Agree To Arbitrate?*

■■■ ¶42 In *Satomi*, the trial court found that Satomi, LLC, failed to prove that all of the individual unit owners agreed to arbitrate. The Court of Appeals concluded otherwise, holding that Satomi Association "acknowledges that all original owners signed the warranty addendum." *Satomi*, 139 Wn. App. at 179. We decline to review the Court of Appeals' resolution of this issue because, as we have noted above, the case is moot and this purely factual question is not one of continuing and substantial public interest. *See supra* Part II.

■■■ ■■■ ¶43 In *Blakeley*, the trial court's order was based in part on "the arbitration provisions in the Warranty Addendums to the Purchase and Sale Agreements *entered into by the Blakeley Commons owners*." BCP at 752 (emphasis added). Without citing any legal authority, Blakeley Association argues in its substantive appellate brief that Blakeley Village did not demonstrate that all original purchasers agreed to arbitration.[21] Br. of Resp't Blakeley Commons Condo. Ass'n at 11. This

on remand. All claims in *Satomi* were rendered moot by the above-discussed settlement in that matter.

[21] Blakeley Association neither raised nor challenged this finding in its brief opposing review. Generally, we would decline to review this issue on that basis. *See Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 202, 11 P.3d 762 (2000) ("Failure to cross-appeal an issue generally precludes its review on appeal." (citing *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 89, 838 P.2d 111, 845 P.2d 1325 (1992))). However, a prevailing party that seeks no further affirmative relief on appeal "is entitled to argue any grounds in support of the

is a significant failing because a respondent's brief should include "[t]he argument in support of the issues presented for review, *together with citations to legal authority* and references to relevant parts of the record." RAP 10.3(a)(6) (emphasis added). "Without adequate, cogent argument and briefing, this court should not consider an issue on appeal." *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990) (citing *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989)). We accordingly decline to consider this issue. The trial court's determination, therefore, stands.

¶44 In *Leschi*, the trial court made no factual findings. "Findings of fact are appropriately made in the trial court." *Martin v. Triol*, 121 Wn.2d 135, 151, 847 P.2d 471 (1993) (citing *Fitzgerald v. Hopkins*, 70 Wn.2d 924, 928, 425 P.2d 920 (1967)). However, "[w]hen a trial court fails to make any factual findings to support its conclusion, and the only evidence considered consists of written documents, an appellate court may, if necessary, independently review the same evidence and make the required findings." *In re Firestorm 1991*, 129 Wn.2d 130, 135, 916 P.2d 411 (1996) (citing *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 222, 829 P.2d 1099 (1992)). Here, although we have the option of deciding this issue, we are not inclined to do so. We think it is more appropriate to leave this issue to be determined by the trial court on remand.

### 2. *Are the Associations Bound by the Arbitration Agreements Entered by Unit Owners?*

¶45 We review this legal question in *Blakeley* with respect to the warranty addenda that the trial court found were signed by unit owners. We do so because the question has been raised and adequately briefed by Blakeley Asso-

---

[ruling] that are supported by the record." *McGowan v. State*, 148 Wn.2d 278, 288, 60 P.3d 67 (2002) (citing RAP 2.4(a); RAP 5.1(d); *State v. Bobic*, 140 Wn.2d 250, 257-58, 996 P.2d 610 (2000)). As the respondent in this appeal, Blakeley Association is entitled to argue any grounds for the trial court's order that are supported by the record.

ciation as an alternative ground for affirming the portion of the trial court's order that is before us. *See McGowan v. State*, 148 Wn.2d 278, 287-88, 60 P.3d 67 (2002) (citing RAP 2.4(a); RAP 5.1(d); *State v. Bobic*, 140 Wn.2d 250, 257-58. 996 P.2d 610 (2000)). We do not, however, review or decide this question in *Satomi* or *Leschi* for the same reasons we declined to review or decide the factual issue in those cases. *See supra* Part IV.B.1.

¶46 Blakeley Association argues that it is not bound by the arbitration clause in the warranty addenda agreed to by unit owners because the owners were not agents of Blakeley Association when the addenda were executed, nor are they its agents today. Blakeley Village, citing the Court of Appeals' decision in *Satomi*, asserts that the addenda are binding on Blakeley Association. For reasons set forth hereafter, we agree that Blakeley Association is bound by the arbitration clause contained in the warranty addendum.

¶47 Under the FAA, whether an arbitration agreement binds a nonsignator is a "gateway dispute" that is " 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (alteration in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) and citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)). The arbitration clause in *Blakeley* does not clearly and unmistakably provide who is to determine whether particular persons or parties are bound by the agreements. *See* BCP at 19. We accordingly hold that whether Blakeley Association is bound by the arbitration clause is an issue for the courts, rather than arbitrators, to determine. *See First Options*, 514 U.S. at 944-45 (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement).

¶48 While a strong public policy favoring arbitration is recognized under both federal and Washington law, *Howsam*, 537 U.S. at 83 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25); *Preston*, 552 U.S. at 353 (quoting *Southland*, 465 U.S. at 10); *Scott*, 160 Wn.2d at 858 (citing *Zuver*, 153 Wn.2d at 301 n.2), " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Howsam*, 537 U.S. at 83 (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) and citing *First Options*, 514 U.S. at 942-43); *Davidson v. Hensen*, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998) ("Washington law generally favors the use of alternative dispute resolution such as arbitration *where the parties agree by contract to submit their disputes to an arbitrator.*" (emphasis added) (citing *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995))). There are, however, certain limited exceptions to the general rule that a nonsignator to an arbitration agreement cannot be compelled to arbitrate. For instance, a nonsignator is bound by the terms of an arbitration agreement where the nonsignator's claims are asserted solely on behalf of a signator to the arbitration agreement. *See Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380-82 (9th Cir. 1997) (requiring claims of California insurance commissioner, asserted as trustee on behalf of insolvent reinsureds to recover insurance proceeds, to be arbitrated where reinsurance agreements contained arbitration clauses); *Clay v. Permanente Med. Group, Inc.*, 540 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007) (holding plaintiffs were bound by terms of agreement, including arbitration provisions, entered by decedent, where plaintiffs brought claims on behalf of decedent's estate); *Southtrust Bank v. Ford*, 835 So. 2d 990, 993-94 (Ala. 2002) (holding estate administrator asserting claim on behalf of estate "stands in the [decedent's] shoes" and is bound to arbitrate claim as the

signator decedent would have been had he asserted claim himself).[22]

¶49 Our analysis of the question of whether Blakeley Association is bound by the arbitration clause in the warranty addendum is guided by this court's decision in *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 745 P.2d 1284 (1987). In *Stuart*, the board of directors of a homeowners' association brought claims against the owner-, developer-builder-vendor, original developer, and architect of a condominium complex. *Id.* at 410-11. We recognized that the board members filed suit in their representative capacities, on behalf of the individual homeowners, and held that the applicable statute of limitations "should operate . . . as of the time the homeowners [rather than the board] actually knew or reasonably should have known of the defects that comprised the elements of their causes of action." *Id.* at 415. Restated, the board, bringing claims on behalf of homeowners, was bound by the homeowners' discovery of the defects to the same extent as the homeowners would have been. *See id.*

¶50 Here, the causes of action alleged by Blakeley Association against Blakeley Village include (1) breach of implied warranty under the WCA, (2) breach of implied warranty of habitability, (3) breach of fiduciary duty, (4) violation of the CPA, and (5) breach of contract. As an element of each cause of action, Blakeley Association has alleged damages to "the Association and its unit owners"

---

[22] In addition, federal courts have held, and the Washington Court of Appeals has recognized, that " '[n]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.' " *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)); *see, e.g., Powell v. Sphere Drake Ins. PLC*, 97 Wn. App. 890, 892, 988 P.2d 12 (1999) (citing *Thomson-CSF, SA v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). " 'Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." ' " *Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042, 1045 (9th Cir. 2009) (quoting *Comer*, 436 F.3d at 1101 (quoting *Thomson-CSF*, 64 F.3d at 776)). Nonsignatories can also seek to enforce arbitration agreements as third party beneficiaries. *Id.* at 1045 n.2 (citing *Comer*, 436 F.3d at 1101). However, Blakeley Village did not raise any of these principles as a basis for reversing the portion of the trial court's order that it appeals. We decline to consider them sua sponte. *See* RAP 1.2(b).

that include "the cost of repairing the project . . . and resulting monetary and material harm." BCP at 8, 9-10, 11. The only property identified in Blakeley Association's complaint, however, is the condominium project's units, common elements, and limited common elements, which are owned by the unit owners, not Blakeley Association.[23] Thus, Blakeley Association has not alleged damage to any property in which it has a protectable interest.

¶51 Considering these facts, we conclude that the claims Blakeley Association raised against Blakeley Village are not brought on its own behalf, notwithstanding its assertions to the contrary.[24] Because it has not alleged damage to any interest that it owns, Blakeley Association lacks standing to bring the claims on its own behalf. *Orion Corp. v. State*, 103 Wn.2d 441, 455, 693 P.2d 1369 (1985) ("To have standing, one must have some protectable interest that has been invaded . . . ." (citing *Vovos v. Grant*, 87 Wn.2d 697, 555 P.2d 1343 (1976); *State ex rel. Hays v. Wilson*, 17 Wn.2d 670, 137 P.2d 105 (1943))); *cf. Satomi*, 139 Wn. App. at 180 (holding Satomi Association brought its claims on behalf of unit owners where the claims asserted "belong[ed] to the individual unit owners"). Thus, the claims against Blakeley Village are brought solely in a representative capacity by Blakeley Association on behalf of its members who own the allegedly damaged property.

¶52 Given that Blakeley Association brings its claims on behalf of the unit owners, taken together with the terms of the arbitration clause providing that it can be enforced

---

[23] The units are "physical portion[s] of the condominium designated for separate ownership." RCW 64.34.020(38). The common elements are "all [of the] portions of a condominium other than the units." RCW 64.34.020(6). The limited common elements are "portion[s] of the common elements" reserved "for the exclusive use of one or more but fewer than all of the units." RCW 64.34.020(25). The definition of "unit owner" includes "a declarant or other person who owns a unit." RCW 64.34.020(39). The individual unit owners own the common elements and the limited common elements. *See* RCW 64.34.204(2), (4), .224(1), .228(1).

[24] In its complaint, Blakeley Association invokes its authority pursuant to RCW 64.34.304(1)(d) and asserts that it brings this action "on behalf of itself and all unit owners with respect to matters affecting the condominium's common and limited common elements." BCP at 6.

against claims asserted by the unit owner or Blakeley Association, we conclude that Blakeley Association is bound by the warranty addenda. As in *Stuart*, 109 Wn.2d at 414-15, where the homeowners' discovery of defects was binding on the board to the same extent as it would have been on the homeowners, here the warranty addendum is enforceable against Blakeley Association to the same extent as it would have been against the unit owners.[25]

## C. *Additional Claims*

### 1. *In* Blakeley, *Is the Arbitration Agreement Procedurally or Substantively Unconscionable or Lacking Mutuality of Obligation?*

¶53 As additional alternative grounds for affirming the portion of the trial court's order that is before us, Blakeley Association claims that the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable and lacks mutuality of obligation. Blakeley Village contends that Blakeley Association failed to meet its burden of proof with respect to each of these claims. For reasons set forth hereafter, we agree with Blakeley Village.

■■ ■■ ¶54 As noted, transactions to which the FAA applies are "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). Hence, " 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.' " *Zuver*, 153 Wn.2d at 302 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d

---

[25] We caution that our holding does not resolve whether each of Blakeley Association's claims is arbitrable pursuant to the terms of the arbitration clause. Because the arbitration clause clearly and unmistakably provides that disputes regarding the arbitrability of particular claims must be arbitrated, the arbitrability of Blakeley Association's claims is an issue for the arbitrator, rather than the courts, to decide. BCP at 19 ("Any issue about whether a dispute or claim must be arbitrated pursuant to this Warranty shall be determined by the arbitrator."); *see infra* Part IV.C.2, addressing this question in *Leschi*.

902 (1996) (citing *Allied-Bruce*, 513 U.S. at 281)). As mentioned above, the burden of proving an agreement is not enforceable lies with the party opposing arbitration. *Id.*

## a. *Procedural Unconscionability*

¶55 Blakeley Association asserts that the warranty addendum is procedurally unconscionable because it is "clearly a contract of adhesion," a " 'take it or leave it' " contract. Br. of Resp't Blakeley Commons Condo. Ass'n at 13, 14. In response, Blakeley Village contends that a " 'take it or leave it' " arbitration agreement is not per se unconscionable. Reply Br. of Appellant Blakeley Commons, LLC, at 13 (quoting *Zuver*, 153 Wn.2d at 305).

¶56 "Whether an agreement is unconscionable is a question of law for the courts." *McKee*, 164 Wn.2d at 396 (citing *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). Procedural unconscionability is one of two categories of unconscionability that has been recognized in Washington, the other being substantive unconscionability. *Zuver*, 153 Wn.2d at 303 (citing *Nelson*, 127 Wn.2d at 131 (citing *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975))).

¶57 "Procedural unconscionability is 'the lack of meaningful choice, considering all the circumstances surrounding the transaction including " '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.' " ' " *Id.* (quoting *Nelson*, 127 Wn.2d at 131 (quoting *Schroeder*, 86 Wn.2d at 260 (quoting *Williams v. Walker-Thomas Furniture Co.*, 121 U.S. App. D.C. 315, 350 F.2d 445, 449 (1965)))). "[T]he fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable." *Id.* at 304 (citing *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of*

*Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993)).[26] "[T]he key inquiry for finding procedural unconscionability is whether [a party] lacked meaningful choice." *Id.* at 305 (citing *Schroeder*, 86 Wn.2d at 260).

¶58 Blakeley Association merely claims that the warranty addendum is an adhesion contract. It fails to even argue the aforementioned factors relating to whether the unit purchasers had a meaningful choice. Therefore, we hold that Blakeley Association has failed to meet its burden of showing the warranty addendum is procedurally unconscionable.

## b. *Substantive Unconscionability*

¶59 Blakeley Association next contends that the arbitration clause is substantively unconscionable because it is unilateral. Blakeley Village asserts that an arbitration clause is not substantively unconscionable merely because it is unilateral.

¶60 A unilateral provision in an arbitration agreement is substantively unconscionable only if it is shown that "the disputed provision is so 'one-sided' and 'overly harsh' as to render it unconscionable." *Zuver*, 153 Wn.2d at 319 n.18, 318 (holding unilateral remedies limitation provision in arbitration agreement was substantively unconscionable because the provision "blatantly and excessively favors the employer in that it allows the employer alone access to a significant legal recourse"). Here, the arbitration clause lacks mutuality as to forum selection because it gives Blakeley Village alone the option of requiring arbitration. The clause is therefore unilateral in that respect. Blakeley Association has not shown, however, that the clause is "so

---

[26] "We have adopted the following factors to determine whether an adhesion contract exists: '(1) whether the contract is a standard form printed contract, (2) whether it was "prepared by one party and submitted to the other on a 'take it or leave it' basis," and (3) whether there was "no true equality of bargaining power" between the parties.' " *Zuver*, 153 Wn.2d at 304 (quoting *Yakima County Fire Prot. Dist.*, 122 Wn.2d at 393 (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 383 n.5 (9th Cir. 1965))).

'one-sided' and 'overly harsh' " as to render it substantively unconscionable. *Id.* at 319 n.18; *cf. Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs.*, 656 P.2d 1184, 1186 (Alaska 1983) ("Arbitration is not so clearly more or less fair than litigation that it is unconscionable to give one party the right of forum selection."). Thus, we hold that Blakeley Association has failed to meet its burden of proof.

### c. *Mutuality of Obligation*

¶61 Blakeley Association asserts without explanation that the arbitration clause lacks mutuality. As noted above, "[w]ithout adequate, cogent argument and briefing, this court should not consider an issue on appeal." *Schmidt*, 115 Wn.2d at 160 (citing *Saunders*, 113 Wn.2d at 345); *see* RAP 10.3(a)(6). We, therefore, decline to consider this issue.

### 2. *Are Leschi Association's Non-WCA Claims Subject to Binding Arbitration?*

¶62 Leschi Corp. contends that the non-WCA claims alleged by Leschi Association, including breach of implied warranty of habitability, breach of duty to disclose latent construction defects, and violation of the CPA, are subject to binding arbitration.[27] Whether an arbitration clause applies to a particular type of dispute or claim is another "issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (alteration in original) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649). Here, the arbitration provision in the limited warranty clearly and unmistakably provides that disputes regarding the arbitrability of particular claims are matters

---

[27] As mentioned, in *Leschi*, the trial court denied arbitration of the entire matter. LCP at 620-22. In contrast, in *Satomi*, the Court of Appeals held in part that Satomi Association's contractual and common law claims were subject to arbitration, *see* 139 Wn. App. at 187, 190, and, in *Blakeley*, the trial court ordered all of Blakeley Association's non-WCA claims stayed pending arbitration of those claims. BCP at 750-52.

that must be arbitrated.[28] Whether the non-WCA claims alleged by Leschi Association are arbitrable is, therefore, a matter for the arbitrators.[29] It is not for the courts to decide.

### 3. *Should Leschi Corp. or Leschi Association Be Awarded Costs and Reasonable Attorney Fees and Expenses for This Appeal?*

¶63 Leschi Corp. and Leschi Association seek costs and reasonable attorney fees and expenses for this appeal. We conclude that Leschi Corp. should be awarded costs under RAP 14.2 because it is the substantially prevailing party in this appeal. "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise . . . ." RAP 14.2. Here, because we reverse the trial court's order denying Leschi Corp's motion to enforce arbitration and remand for further proceedings, Leschi Corp. has prevailed on the major issues. Consequently, it is the substantially prevailing party on this appeal and should be awarded its costs. *See Nw. Television Club, Inc. v. Gross Seattle, Inc.*, 96 Wn.2d 973, 986, 640 P.2d 710 (1981).

¶64 We deny the requests of both parties for attorney fees, however, because our decision is not determinative of the prevailing party with regard to the underlying litigation. Reasonable attorney fees may be awarded on appeal if applicable law grants to a party the right to recover such fees or expenses on review before either the Court of Appeals or the Supreme Court. RAP 18.1(a). The WCA provides that "[t]he Court, in an appropriate case, may award reasonable attorney's fees to the prevailing

---

[28] The limited warranty provides in pertinent part that "[d]isputes subject to binding arbitration" include "[d]isputes concerning the issues that should be submitted to binding arbitration." LCP at 392, 393.

[29] We note that this question should be presented to the arbitrators only if, on remand, the trial court (1) finds that unit owners entered arbitration agreements with Leschi Corp. and (2) concludes that Leschi Association is bound by the agreements.

party." RCW 64.34.455. Our decision in this appeal does not determine the prevailing party for purposes of RCW 64.34.455 because it is not known which party will ultimately prevail on the underlying claims. That determination will be made only after further proceedings, upon entry of a final judgment on Leschi Association's claims.

¶65 Similarly, the attorney fee provision in the purchase and sale agreements provides, "If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." LCP at 353. For the same reasons discussed with respect to RCW 64.34.455, neither party has prevailed for purposes of the attorney fee provision in the purchase and sale agreements. We hold, therefore, that neither party is entitled to reasonable attorney fees and expenses for this appeal.

### 4. *Remaining Claims in* Leschi

¶66 Leschi Corp. contends that the WCA's current judicial enforcement provision is trumped by Washington's uniform arbitration act, chapter 7.04A RCW. Because we hold that the WCA's judicial enforcement provision is preempted by the FAA, we need not reach this issue. *See supra* Part IV.A.2. Leschi Corp. argues additionally that the trial court proceedings should be stayed pending binding arbitration. We do not reach that issue because the Court of Appeals entered a notation ruling staying the trial court proceedings and our decision does not disturb that order. *See* Notation Ruling, *Pier at Leschi Condo. Owners Ass'n v. Leschi Corp.*, No. 59821-0-I (Wash. Ct. App. June 19, 2007). Leschi Association claims that the arbitration agreement in the condominium declaration is void because it conflicts with the WCA's judicial enforcement provision. Resolution of this issue is unnecessary because of our holding that the FAA preempts the WCA's judicial enforcement provision. This decision allows Leschi Corp. to seek to compel arbitration pursuant to the arbitration provisions in the limited warranty irrespective of the

validity of the arbitration agreement in the condominium declaration.

¶67 Finally, amicus Professional Warranty Service Corporation (PWSC) argues in its brief that the transactions in *Leschi* are governed by the FAA because of a choice of law provision in the warranty addendum. Br. of PWSC as Amicus Curiae at 4-7; *see* LCP at 393. We decline to consider this issue because it was raised only by an amicus. *See* Answer to Br. of Amicus PWSC at 3-8; *Mains Farm Homeowners Ass'n v. Worthington,* 121 Wn.2d 810, 827, 854 P.2d 1072 (1993) (citing *Coburn v. Seda,* 101 Wn.2d 270, 279, 677 P.2d 173 (1984)); *State v. Gonzalez,* 110 Wn.2d 738, 752 n.2, 757 P.2d 925 (1988); *Long v. Odell,* 60 Wn.2d 151, 154, 372 P.2d 548 (1962).

## V. CONCLUSION

¶68 In conclusion, we hold that the FAA preempts the WCA's judicial enforcement provision based on our determinations that (1) the FAA applies to the transactions at issue in each of these cases and (2) the prior and current enforcement provisions conflict with the FAA.

¶69 In *Satomi,* we reverse the portion of Court of Appeals' opinion holding the FAA does not apply to the transactions at issue. In *Blakeley,* we reverse the portion of the trial court's order denying arbitration of Blakeley Association's WCA statutory warranty claims and denying a stay of those claims pending arbitration. In *Leschi,* we reverse the trial court's order denying arbitration of Leschi Association's claims. Finally, we remand *Blakeley* and *Leschi* to the trial courts for further proceedings consistent with this opinion.

MADSEN, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶70 CHAMBERS, J. (dissenting) — The majority incorrectly frames the issue, answers the wrong question, and ignores

the nature of the homeowners' claims. The issue before us is whether a claim for breach of implied warranty, established by Washington statute after consultation with the stakeholders, imposed on Washington state builders, to protect condominium purchasers in Washington State, is preempted by federal laws because some of the materials used in building condominiums came from across the border. The answer is no because the homeowners' claims are not predicated upon defective materials that were shipped in interstate commerce. Instead, the claims before us arise out of a warranty, imposed by state law, which states that the seller (for our purposes)

> impliedly warrants that a unit and the common elements in the condominium are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by such declarant or dealer will be:
>
> (a) Free from defective materials;
>
> (b) Constructed in accordance with sound engineering and construction standards;
>
> (c) Constructed in a workmanlike manner; and
>
> (d) Constructed in compliance with all laws then applicable to such improvements.

RCW 64.34.445(2). Again, the breach of warranty claims are not based upon interstate commerce but on the builders' obligation to select suitable materials and install them in a workmanlike manner, all of which occurs wholly within the state. I agree with and would affirm the Court of Appeals' well reasoned opinion in *Satomi Owners Ass'n v. Satomi, LLC*, 139 Wn. App. 175, 159 P.3d 460 (2007), and conclude that the Federal Arbitration Act (FAA), 9 U.S.C. § 2, does not preempt Washington law relating to a breach of that implied warranty. Accordingly, I respectfully dissent.

¶71 Our analysis should begin with an examination of the history and purpose of the Washington Condominium Act (WCA), chapter 64.34 RCW. Some portions of Washington State are known for rain and moisture. The Washington State Legislature perceived a problem with the construc-

tion and sale of condominiums that would soon mold and deteriorate because of inadequate weatherproofing and construction that had already led to a great deal of litigation and a significant disincentive to build even high quality condominium projects. CONDO. ACT STUDY COMM., REPORT TO THE JUDICIARY COMMITTEES OF THE WASHINGTON STATE SENATE AND HOUSE OF REPRESENTATIVES 1-2 (Jan. 2005) [hereinafter CASC REPORT].[30] The legislature responded by appointing a special committee of stakeholders (some of which are before us in this case) to study the problem and suggest solutions. *Id.* The committee, and later the legislature, tried to fix both the underlying problem of water penetration into condominiums through stricter building and inspection standards and statutory warranties, and the problem of endless and expensive litigation through a dispute resolution mechanism designed for the specific type of disputes. *See id.*; WCA, chs. 64.34, 64.55 RCW; *see also* Mark F. O'Donnell & David E. Chawes, *Improving the Construction and Litigation Resolution Process: The 2005 Amendments to the Washington Condominium Act Are a Win-Win for Homeowners and Developers,* 29 SEATTLE U. L. REV. 515, 515-16 (2006) (citing CASC REPORT at 1). The WCA makes arbitration mandatory upon request of nearly any party to a condominium dispute. RCW 64.55.100(1). It also makes trial de novo available if any party is not satisfied by the arbitration, with the looming potential of an attorney fee shifter should the advocate of trial de novo not improve its position. RCW 64.55.100(5), (6). Binding arbitration without the possibility of judicial review is not lawful. RCW 64.34.030 ("Except as expressly provided in this chapter, provisions of this chapter may not be varied by agreement.").

¶72 The stakeholders on the Condominium Act Study Committee (CASC) spent countless hours hammering out solutions and compromises that, in the committee's words, left "no member . . . happy with all of [its] recommenda-

---

[30] This report is available at www.oregon.gov/DCBS/CCTF/docs/012805_report.pdf.

tions." CASC REPORT at 17. But CASC strongly recommended that the legislature adopt all of its recommendations, "and not to cherry-pick the easier" ones. *Id.* at 3. "All members made significant concessions in order to make gains elsewhere." *Id.* at 17. As far as I can tell, the Washington State Legislature honored that compromise.

¶73 The question is whether Washington's carefully crafted approach to a Washington-specific problem is preempted by section 2 of the FAA. The FAA simply requires courts to enforce arbitration contracts like any other contract, and only if the specific contract is "involving commerce" under 9 U.S.C. § 2. "Involving commerce" is a term of federalism art; it means involving *interstate* commerce. *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). The individual activity need not involve interstate commerce "if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' " *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56-57, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (alteration in original) (quoting *Mandeville Island Farms, Inc., v. Am. Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S. Ct. 996, 92 L. Ed. 1328 (1948)).

¶74 The majority concludes that the purchase and sale of condominiums sufficiently implicates interstate commerce that preemption applies and the arbitration portions of the WCA are unenforceable. Such a conclusion is inconsistent with the established principle that the sale of real estate, including the requirements for and interpretation of purchase agreements, is governed by state law. Washington State closely regulates real property law. *See* Title 8 RCW (eminent domain); ch. 18.86 RCW (real estate brokerage relationships); Title 61 RCW (mortgages, deeds of trust, and real estate contracts); Title 64 RCW (real property and conveyances). Conversely, the federal government does not, as "a general practice," regulate property sales. *Cf. Citizens Bank,* 539 U.S. at 56-57; *see also Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970)

("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." (citing *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443, 80 S. Ct. 813, 4 L. Ed. 2d 852 (1960))).

¶75 I believe the proper question is whether the Washington State Legislature can, in response to a perceived crisis in Washington concerning condominiums, regulate condominiums through comprehensive legislation that includes implied warranties and their enforcement, or whether the warranties sufficiently involve interstate commerce to justify federal intervention.[31] I conclude it can. I agree with the Court of Appeals opinion in *Satomi* below: there are four reasons why the FAA does not apply to the statutory warranties under RCW 64.34.445. First, this is "a 'garden variety' Washington real estate deal." *Satomi*, 139 Wn. App. at 188. "Second, real property law has historically been the law of each state." *Id.* While both considerations are not determinative of whether the arbitration clauses apply, certainly the historical division of federal and state concerns is not irrelevant. As Judge Ellington continued:

> Third, the warranties in question arise entirely from state law. Unlike *Citizens Bank* and *Allied-Bruce*, where the very subject matter of the contracts involved interstate commerce, here the issues are confined to claims founded in warranties created by the Washington Legislature.

---

[31] The contracts in these cases treat the warranties separately. For example, the Satomi warranty addendum reads:

> 7. Seller's Right to Arbitration. At the option of the Seller, Seller may require that any claim asserted by Purchaser or by the Association under this Warranty or any other claimed warranty relating to the Unit or Common Elements must be decided by arbitration, in King County, Washington, under the Construction Arbitration Rules of the American Arbitration Association (AAA) in effect on the date hereof, as modified by this Warranty.

Clerk's Papers (CP) (Satomi) at 196; *see also* CP (Blakeley) at 16, 19-20; CP (Leschi) at 489, 358, 392. These arbitration clauses specifically apply to the statutory warranty. Whether that application is preempted by the FAA is the proper question.

Fourth, these transactions have none of the earmarks of an economic activity that in the aggregate would represent a general practice subject to federal control. The Company offers no authority holding that local real estate transactions represent such a practice, or that warranties required by state law for state condominium projects represent such a practice, or that local regulation of real estate transactions can constitute an economic activity that in the aggregate would represent a general practice subject to federal control. The Company relies upon a single fact: that construction materials came from outside Washington State. In some cases, this is adequate for FAA preemption. Here, it is not.

. . . .

Here, the only connection to interstate commerce is that materials from elsewhere were used in construction, and some of those were allegedly unsound or unsuitable, thereby violating the warranty required by RCW 64.34.445 that the condominium be free from defective materials and constructed in accordance with applicable state law. This warranty amounts to a guarantee that the builder has examined the materials used and ensures they are of sound quality and suitable for the use to which they are put, on site, in Washington State. The origin of the materials is irrelevant to the warranty, and the giving of the warranty is not a transaction involving commerce because, in the aggregate or otherwise, it does not represent a general practice subject to federal control. Whether the condominium declarant violated the warranty is not a dispute involving interstate commerce.

*Id.* at 188-90. I agree. We should give force to the compromise crafted by Washington stakeholders and hold that the statutory warranty claims are subject to the WCA. I would affirm the Court of Appeals' well reasoned opinion in *Satomi* and thus respectfully dissent.

C. JOHNSON and SANDERS, JJ., concur with CHAMBERS, J.