# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RAVEN OFFSHORE YACHT, SHIPPING, LLP, | ) ) ) | |
| Appellant, | ) ) | No. 75935-3-I |
| v. | ) ) ) | DIVISION ONE |
| F.T. HOLDINGS, LLC, a Washington limited liability company, | ) ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | FILED: July 3, 2017 |

2017 JUL -3 AH 9: 14
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SPEARMAN, J. — Whether a specific dispute is within the scope of an arbitration agreement is generally a question for the court. But the parties may, by contract, delegate the issue of arbitrability to the arbitrator. By incorporating the rules of an arbitration body, the parties give clear and unmistakable evidence that they agree to be bound by those rules, including on the issue of arbitrability.

F.T. Holdings, LLC (FT), entered into a contract with Raven Offshore Yacht Shipping, LLP (Raven). The contract included an arbitration clause, under which the parties agreed to arbitrate disputes according to the rules of the Maritime Arbitration Association (MAA). FT later brought claims of negligence, negligent misrepresentation, and violations of the consumer protection act (CPA), chapter 19.86 RCW, against Raven. Raven moved to compel arbitration. The trial court denied the motion. But because the parties agreed to arbitration according

to MAA rules, and those rules entrust questions of arbitrability to the arbitrator, we reverse.

## FACTS

FT owned the yacht Nanea. In August 2015, FT entered into a contract with Raven to transport the Nanea from Florida to British Columbia. The yacht was to be shipped as cargo onboard an ocean carrier. Under the contract's terms and conditions, FT was required to maintain various types of insurance. The contract specifies a total price of $101,480, a price that included transport and "Lloyd's Cargo Insurance in the amount of 2.9 Million USD value." Clerk's Papers (CP) at 21. The contract also includes an arbitration clause in which the parties agreed to resolve disputes arising from the contract through arbitration "conducted in accordance with the Rules of the Maritime Arbitration Association of the United States." CP at 27.

The Nanea was transported to British Columbia. During transport, electricity onboard the Nanea was disconnected and, as a result, the yacht's bilge pumps were not functional. The yacht took on water during shipping and suffered damage amounting to about $300,000. FT filed a claim with Lloyd's insurance. Lloyd's denied the claim because the Nanea's bilge pumps were not operable when the damage occurred.

FT filed suit against Raven and Raven's managing partner, Richard Gladych. FT alleged that it discussed insurance with Gladych in July 2015. FT asserted that, during these discussions, Gladych acted for and on behalf of

Raven; Gladych represented that he was an insurance broker with expertise in obtaining appropriate insurance for transporting a yacht as cargo; FT agreed to entrust Gladych with insurance arrangements; and the July 2015 discussions and agreement with Gladych induced FT to enter into the August 2015 contract with Raven. FT alleged that Gladych did not have a valid insurance broker's license and the insurance he procured was not suitable for the Nanea's transportation onboard an ocean carrier. FT asserted claims for negligence, negligent misrepresentation, and violations of the CPA. Raven moved to compel arbitration. The trial court denied the motion.

## DISCUSSION

Raven appeals the trial court's denial of its motion to compel arbitration. An arbitration clause is a matter of contract and is enforceable as a contract term. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L.Ed.2d 742 (2011) (citing Buckeye Check Cashing, Inc., v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L.Ed.2d 1038 (2006)). An arbitration agreement only applies to those issues the parties have agreed to submit to arbitration. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 810, 225 P.3d 213 (2009) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L.Ed.2d 491 (2002)).

The threshold question of arbitrability, or whether a specific dispute is within the scope of an arbitration agreement, is generally for the court. RCW 7.04A.060(2). But the parties may, by contract, delegate the question of arbitrability to the arbitrator. RCW 7.04A.040(1). See First Options of Chicago,

Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995). A court will only find that the parties entrusted arbitrability to the arbitrator where the contract provides "[c]lear and unmistakabl[e] evidence" that the parties so agreed. First Options, 14 U.S. at 944-45 (quoting AT& T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986)). We review the trial court's decision on a motion to compel arbitration de novo. Otis Housing Ass'n, Inc., v. Ha, 165 Wn.2d 582, 586, 201 P.3d 309 (2009).

The arbitration clause in this case applies to "[d]isputes arising from this Contract" and specifies that arbitration is to be "conducted in accordance with the rules of the Maritime Arbitration Association of the United States." CP at 27. As relevant here, MAA Rule 9(a) states:

> Unless the parties otherwise agree, the arbitral tribunal shall have the power to decide all issues arising out of or related to any claim or response, or agreement to arbitrate an existing dispute. This includes not only the merits of the dispute but any issues with respect to the jurisdiction of the arbitral tribunal and the existence, scope or validity of the underlying arbitration agreement.

MAR. ARBITRATION ASS'N OF THE U.S., ARBITRATION RULES r. 9(A) (rev. Feb. 2008), http://www.maritimearbitration.com/files/MAA%20Arbitration%20Rules%200208. pdf [https://perma.cc]. (Emphasis added). Raven asserts that MAA rules empower the arbitrator to decide questions of arbitrability and that, by incorporating MAA rules, the parties agreed to the rules' arbitrablity provision. FT contends that the mere incorporation of MAA rules is insufficient evidence that

4

the parties entrusted the question of arbitrability to the arbitrator.[1]

Washington courts have apparently not addressed the effect of incorporating the rules of an arbitration body in an arbitration clause. Raven relies on federal cases holding that, when an arbitration agreement incorporates the rules of an arbitration body, and those rules clearly delegate questions of arbitrability to the arbitrator, the parties have agreed to submit arbitrability to the arbitrating body. See, Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) ("when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989) (holding that, by incorporating the arbitration rules of the International Chamber of Commerce, the parties were bound by the arbitrability provision of those rules); Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332, (11th Cir. 2005) (holding that, by incorporating the rules of the American Arbitration Association, "the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause [was] valid.").

FT does not address these cases. FT argues that no Washington or Ninth Circuit authority has held that incorporation of MAA rules constitutes clear and

---

[1] At oral argument, FT asserted, for the first time, that Raven did not argue arbitrability below and thus consented to the trial court's jurisidiction. We decline to consider this argument as raised for the first time at oral argument. See State v. Johnson, 119 Wn.2d 167, 170, 829 P.2d 1082 (1992).

unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator. In addressing rules with similar arbitrability provisions, however, the Ninth Circuit agrees with the circuits cited above. See Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074-75 (9th Cir. 2013) (considering a contract incorporating the rules of the United Nations Commission on International Trade Law and holding that, where sophisticated parties to commercial contracts incorporate rules of an arbitrating body, they clearly and unmistakably agree to be bound by arbitrability provision of those rules). FT advances no argument that MAA rules should be treated differently than the rules of other arbitrating bodies.

FT asserts that the only case it has located addressing the incorporation of MAA rules is an unreported case from a Massachusetts district court. The cited case, Micoperi, S.R.L. v. CHM Maritime, S.A.P.I de C.V., 2015 WL 997663, is instructive.

In that case, Micoperi contracted with CHM to charter vessels. Micoperi, 2015 WL 997663, *1. Under the contract's arbitration clause, contract disputes were to be decided in accordance with MAA rules. Id. at *3. Micoperi submitted tort claims to arbitraton. Id. at *1. The arbitrator ruled that the claims were outside the scope of arbitration because they did not arise out of or relate to the contract. Id. Micoperi then filed a motion to compel arbitration in district court, which the court denied. Id. at *2. The court stated that MAA Rule 9(a) "unequivocally delegates to the arbitrator the power to decide the proper scope of the arbitration, and to rule upon what claims may or may not be arbitrable in that proceeding." Id. at *3. Relying on case law addressing the rules of other arbitration bodies, the

6

<u>Micoperi</u> court ruled that, by incorporating MAA rules, the parties manifested their agreement to be bound by those rules, including on the issue of arbitrability. <u>Id.</u>

Like the <u>Micoperi</u> court, we conclude that MAA Rule 9(a) unequivocally empowers the arbitrator to decide whether a specific dispute is arbitrable. By incorporating MAA rules, the parties clearly and unmistakably manifested their agreement to be bound by those rules. Because the parties agreed to arbitrate arbitrability, the trial court erred in denying Raven's motion to compel arbitration. We do not reach the parties' arguments as to whether FT's claims are within the scope of the arbitration agreement.

FT contends, however, that even if Raven and FT agreed to entrust arbitrability to the arbitrator, Gladych never agreed to arbitrate claims against him. FT thus argues that the question of whether Gladych is bound by the agreement must be decided by the court.

Generally, an arbitration agreement binds only the parties to that agreement. <u>Satomi</u>, 167 Wn.2d at 810. Whether a particular person is bound by an agreement is a threshold question of arbitrability. <u>Id.</u> at 809. A nonsignatory may be bound to an arbitration agreement through contract or agency principles. <u>Comer v. Micor, Inc.</u>, 436 F.3d 1098, 1101 (9th Cir. 2006). These include incorporation by reference, assumption, agency, and estoppel. <u>Id.</u>

In this case, FT's complaint alleges that "at all times described above, Defendant Gladych was acting for and on behalf of Defendant Raven." CP at 4. FT thus posits that Gladych was acting as Raven's agent. A company's agent, though a nonsignatory, is bound by an arbitration agreement. See <u>Pritzker v.</u>

7

Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) (noting that a company can only act through its employees and "'an arbitration agreement would be of little value if it did not extend to'" its agents) (quoting Trott v. Paciolla, 748 S. Supp. 305, 309 (E.D. Pa. 1990)). There is no threshold dispute as to whether Gladych, as Raven's agent, is bound by the arbitration agreement.

Reversed.

WE CONCUR: