# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of | No. 78732-2-I |
| JEROME D. ANCHES. | |
| THE ESTATE OF JEROME D. ANCHES, by and through its Personal Representative, RITA ANCHES, | DIVISION ONE |
| Respondent, | |
| v. | |
| BARBARA GRASHIN, an individual, and THE SHELBY COMPANY, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Appellants. | FILED: July 29, 2019 |

ANDRUS, J. — Barbara Grashin and the Shelby Company, LLC challenge a superior court order denying their motion to compel arbitration of claims asserted by the Estate of Jerome D. Anches, Grashin's deceased brother. Because Shelby's Amended and Restated Limited Liability Company Agreement (LLC Agreement) requires the arbitrator to determine arbitrability of any dispute, we reverse and remand for entry of an order compelling arbitration.

## FACTS

Before Anches's death in November 2016, he and Grashin owned 90 percent of the voting units of Shelby, a Seattle-based commercial real estate business. Shelby has two categories of membership units, Class A voting Units and Class B nonvoting Units. Paragraph 12.3 of the LLC Agreement provides that if a Member holding Class A Units transfers those units, they automatically convert to Class B Units, unless the transfer is made to a "Family Member," and "the governing document pursuant to which such transfer was made expressly provides that the Class A Units shall remain as Class A Units following the transfer."

Anches executed a will under which all his property, including his Class A Units in Shelby, transferred into the Jerome Anches Revocable Trust (the Trust) upon his death. The Trust provided that Anches's Class A Units were to be allocated by the trustee between a Credit Trust, a Marital Trust, and any trust established through the Trust in which his daughter, or a descendent of his daughter, was the primary beneficiary. It also stated that all Shelby Class A Units allocated to these trusts "shall retain their status as Class A voting units." Any Class A Units not transferred to one of the designated trusts "shall revert to Class B nonvoting units."

The Estate alleges that when Anches died, Grashin seized control of Shelby and stopped all distributions to the Estate. It further alleges that Grashin barred the Estate from voting Anches's Class A Units. The Estate contends it holds Anches's Class A Units and has voting rights in Shelby. But Grashin and Shelby contend the Estate does not hold Class A Units because, by transferring his units

to a trust rather than to a contractually defined "Family Member," Anches failed to comply with paragraph 12.3 of the LLC Agreement. They also contend that the document that effectuated the transfer, Anches's will, did not expressly provide that his Class A Units would retain their voting rights upon transfer.

The Estate filed a TEDRA[1] petition, seeking a declaration that Anches's Class A Units in Shelby retained their voting rights when transferred into the Trust under Anches's will. It alternatively asked the court to reform the will and Trust, under RCW 11.96A.125, to give effect to Anches's intent to ensure the units retained their Class A status "for all purposes under the Shelby LLC Agreement, including retaining their Class A status after the Estate transfers the Units to the Trust."

Grashin and Shelby filed a joint motion to compel arbitration of the Estate's "voting rights claim" under paragraph 15.13 of the LLC Agreement, which provides:

> Any claim or dispute among the parties relating to this Agreement shall be determined by arbitration in Seattle, Washington under the American Arbitration Association (AAA) Commercial Arbitration Rules with Expedited Procedures in effect on the date hereof, as modified by this Agreement (but not administered by the AAA). . . .
>
> . . . .
>
> Any issue about whether a claim or dispute is covered by this Agreement . . . shall be determined by the arbitrator.

The superior court denied the motion to compel arbitration, concluding that the Estate's claims arise out of Anches's will and Trust, not out of the LLC Agreement. Grashin and Shelby appeal.

---

[1] The Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

- 3 -

## ANALYSIS

Our review of the superior court's decision on a motion to compel arbitration is de novo. Raven Offshore Yacht Shipping, LLP v. F.T. Holdings, LLC, 199 Wn. App. 534, 538, 400 P.3d 347 (2017). Grashin and Shelby argue that the terms of the LLC Agreement require an arbitrator to determine whether the Estate's voting rights claim is arbitrable. We agree.

The Uniform Arbitration Act[2] provides that the "court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." RCW 7.04A.060(2). Notwithstanding this statutory language, parties may, by contract, delegate the question of arbitrability to the arbitrator. RCW 7.04A.040(1); see also Raven Offshore, 199 Wn. App. at 538. Our Supreme Court has held that an arbitration provision may "clearly and unmistakably provide[] that disputes regarding the arbitrability of particular claims are matters that must be arbitrated." In such cases, whether the claims are arbitrable is for the arbitrator, not the court, to decide. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 816-17, 225 P.3d 213 (2009); see also Raven Offshore, 199 Wn. App. at 538.

Shelby's LLC Agreement provides that "[a]ny issue about whether a claim or dispute is covered by this Agreement . . . shall be determined by the arbitrator." This provision is a clear and unmistakable declaration by the parties to have any dispute regarding the arbitrability of the status of a member's voting rights submitted to and decided by the arbitrator.

---

[2] Chapter 7.04A RCW.

The LLC Agreement also provides that any claim or dispute is subject to the AAA Commercial Arbitration Rules. Rule 7(a) of AAA's Commercial Arbitration Rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[3] By incorporating the AAA rules into the arbitration provision, the parties again expressed their intent to have the arbitrator, and not a court, decide arbitrability. Raven Offshore, 199 Wn. App. at 538, 541 (trial court erred in denying motion to compel arbitration because the parties agreed to have arbitrability determined by the arbitrator by incorporation of the rules of the Maritime Arbitration Association (MAA) of the United States).

We conclude that, through the clear and unmistakable language of the LLC Agreement, the arbitrator must decide whether the parties' dispute is arbitrable. See Henry Schein, Inc. v. Archer & White Sales, Inc., __ U.S. __, 139 S. Ct. 524, 528, 202 L. Ed. 2d 480 (2019) (holding that under the Federal Arbitration Act "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract"). The superior court erred by denying the motion to compel arbitration.

Grashin and Shelby request attorney fees on appeal under paragraph 15.13 of the LLC Agreement, which provides that "[t]he arbitrator may award reasonable attorneys' fees and costs to the substantially prevailing party." Although a party

---

[3] American Arbitration Association, Commercial Arbitration Rules & Mediation Procedures 13 (2013), https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf.

may be awarded attorney fees based on a contractual fee provision at the trial and appellate level, RAP 18.1; see also Renfro v. Kaur, 156 Wn. App. 655, 666-67, 235 P.3d 800 (2010), the parties here agreed to have this matter resolved by the arbitrator. We therefore neither grant nor deny Grashin's and Shelby's request for attorney fees incurred in this appeal and refer that issue to the arbitrator to adjudicate.

Reversed and remanded.

WE CONCUR:

_Andrus, J._

_Chun, J._