IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BENJAMIN WOOLLEY, an individual residing in the State of Washington, | ) ) ) | No. 81218-1-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| EL TORO.COM, LLC, a Delaware limited liability company; HTTP HOLDINGS, LLC, a Wyoming corporation; and DANIEL KIMBALL, an individual residing in the state of Kentucky, | ) ) ) ) ) ) ) ) | |
| Appellant. | ) ) ) | |

HAZELRIGG, J. — Appellants challenge the trial court's determination that only some claims at issue in this case are subject to arbitration. The written agreement between the parties expressly incorporates the American Arbitration Association's commercial rules and provides that an arbitrator is to determine whether claims are subject to arbitration. Therefore, the trial court erred in determining the arbitrability of the parties' claims and we reverse.

FACTS

Due to the procedural posture of this case, many of the facts remain disputed by the parties. Those set out in this opinion are derived from the briefing

and record on appeal, but with the understanding that this is not a fact finding court and proper findings of fact will be determined in future proceedings after remand.

El Toro.com, LLC (El Toro) and HTTP Holdings, LLC (HTTP),[1] both based in Kentucky, are in the business of developing, marketing, and licensing an online platform that implements a proprietary data sharing model that allows for a marketplace to utilize the value of personally identifiable information, without the need for the information to leave the source.

Around June 2012, Daniel Kimball reached out to Benjamin Woolley about joining him at El Toro, a new business venture he had undertaken. The two contemplated that Woolley would receive an ownership interest in exchange for his work with the business. Woolley also began working as an independent contractor for El Toro. Effective January 1, 2015, the executives of El Toro, including Woolley, formed HTTP for the purpose of owning their collective interest in and managing El Toro. All the executives voluntarily ceded their shares in El Toro to HTTP and, in return, were provided HTTP membership interests and became interest holders in HTTP. As a result, no individuals own interest in El Toro; it is entirely owned by HTTP.

In 2017, the interest holders of HTTP, including Woolley, entered into an "Amended and Restated Operating Agreement of HTTP Holdings, LLC" (2017 Operating Agreement). This 2017 Operating Agreement restructured HTTP to provide for two classes of ownership. The agreement also contained an arbitration

---

[1] Daniel Kimball is a member of HTTP and the initial manager of the company. He was sued by Woolley in his personal capacity, along with HTTP and El Toro, and, as such, is one of the named appellants. For clarity, we refer to the numerous appellants collectively as HTTP.

provision setting forth the agreement of all interest holders to resolve any dispute as to their rights or liabilities under the agreement by arbitration in accordance with American Arbitration Association (AAA) commercial rules. That section of the agreement states:

> 18.7 Arbitration. Except as otherwise provided in Section 18.3(b), if any dispute shall arise between the Interest Holders as to their rights or liabilities under this Agreement, the dispute shall be exclusively determined, and the dispute shall be settled, by arbitration in accordance with the commercial rules of the American Arbitration Association. The arbitration shall be held in Louisville, Kentucky before a panel of three arbitrators, all of whom shall be chosen from a panel of arbitrators selected by the American Arbitration Association (or such other independent dispute resolution body to which they shall mutually agree). Each of the parties to the dispute shall select one arbitrator and the two arbitrators so selected shall select a third arbitrator. If the two arbitrators are unable to agree on the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (or such other independent body to which they shall mutually agree). The decision of the arbitrators shall be final and binding upon the Interest Holders and the Company and judgment upon such award may be entered in any court of competent jurisdiction. The costs of the arbitrators and of the arbitration shall be borne one-half by each of the parties. The costs of each party's counsel, accountants, etc., as well as any costs solely for their benefit, shall be borne separately by each party. EACH OF THE INTEREST HOLDERS HEREBY ACKNOWLEDGES THAT THIS PROVISION CONSTITUTES A WAIVER OF THEIR RIGHT TO COMMENCE A LAWSUIT IN ANY JURISDICTION WITH RESPECT TO THE MATTERS WHICH ARE REQUIRED TO BE SETTLED BY ARBITRATION AS PROVIDED IN THIS SECTION 18.7.

In the period between October 16, 2015 and January 14, 2019, HTTP directly and through El Toro, made various payments to Woolley separate from his regular member distributions. Woolley was an employee of HTTP between June 2016 and February 1, 2019, when he was terminated. On the date of termination, HTTP delivered a demand to Woolley seeking a return of the payments he

received separate from his wages as an employee and member distributions. In the termination letter, HTTP characterized the payments as advances.

In March 2019, Woolley filed suit in Snohomish County Superior Court seeking recovery for unpaid wages, a declaratory judgment under a wage rebate theory as to the characterization of the extra payments, and a separate declaratory judgment regarding Woolley's ownership interest in the businesses. HTTP initiated arbitration with Woolley in May 2019. HTTP brought five claims, two of which addressed the merits of Woolley's ownership interest claims and those concerning the characterization of the extra payments.

In June 2019, HTTP filed a motion to dismiss Woolley's wage claims and to stay the claims on the payments and ownership interest pending resolution of the arbitration proceeding. Woolley filed a cross-motion regarding arbitrability. The trial court continued the hearing on the pending motions and the parties engaged in discovery in both the superior court action and the arbitration proceeding.

Following discovery in both proceedings, HTTP amended its claims in the arbitration action so that only those that were substantively the same as Woolley's payment characterization and ownership interest claims remained. Woolley amended his complaint in the trial court to dismiss two of his claims regarding failure to pay wages, leaving only those addressing his asserted ownership interest and the payment characterization. As to the ownership claim, Woolley argues he retained an interest in El Toro that is entirely independent of his ownership interest in HTTP. He disputes HTTP's characterization of the extra payments as advances that he must repay.

The parties provided the trial court with supplemental briefing on their cross-motions and a hearing was set for January 29, 2020. However, the trial court continued the hearing based on a clerical error. The same day that the trial court hearing was set, the AAA panel conducted an evidentiary hearing on whether HTTP's claims regarding the advances and ownership interest fell within the scope of the arbitration provision of the 2017 Operating Agreement. On February 7, 2020, the AAA panel issued an order concluding that Woolley had signed the 2017 Operating Agreement and was bound by the arbitration provision. The panel further determined that both the ownership interest and advances claims were arbitrable.

The trial court requested a copy of the AAA order and Woolley's counsel provided it to the court. Oral argument on the cross-motions was held on February 25, 2020. The trial court granted in part and denied in part HTTP's motion to compel arbitration. Specifically the court's order stated:

> Defendant's Motion to Compel Arbitration is GRANTED as to: (i) the dispute regarding Plaintiff Benjamin Woolley's ownership interest in HTTP Holdings, LLC, (ii) the dispute regarding how to characterize payments by HTTP Holdings, LLC to Mr. Woolley or on his behalf after November 30, 2017, and (iii) whether Mr. Woolley is obligated to repay payments he received from HTTP Holdings, LLC on or after November 30, 2017.
>     Except as provided above, Defendant's Motion to Compel Arbitration is DENIED and any arbitration proceeding in conflict with this order is STAYED.

HTTP appealed.

ANALYSIS

I.    Determination of Arbitrability

Appellants challenge the trial court's determination that some of the claims were not subject to the arbitration provision of the 2017 Operating Agreement. HTTP argues that this was a question for the arbitrator and not the court. We agree.

This court reviews a trial court's decision on a motion to compel arbitration de novo. Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC, 199 Wn. App. 534, 538, 400 P.3d 347 (2017). "An arbitration clause is a matter of contract and is enforceable as a contract term." Id. at 537. "An arbitration agreement only applies to those issues the parties have agreed to submit to arbitration." Id. at 538. The Uniform Arbitration Act[2] provides that the "court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." RCW 7.04A.060(2). However, parties to an agreement may contract to delegate the question of arbitrability to the arbitrator. Raven Offshore, 199 Wn. App. at 538.

The issue before us is whether the parties' agreement delegated the question of arbitrability to an arbitrator. The trial court's unchallenged finding of fact #1 states, "Plaintiff signed the Amended and Restated Operating Agreement of HTTP Holdings, LLC dated November 30, 2017 ('HTTP Amended Operating Agreement')." Because this finding of fact is not challenged it is treated as a verity on appeal. Young v. Toyota Motor Sales, U.S.A., 196 Wn.2d 310, 317, 472 P.3d

_____

[2] Ch. 7.04A RCW.

990 (2020). The court further concluded that the 2017 Operating Agreement is effective as to Woolley. The Supreme Court of the United States "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id.

Here, the arbitration provision in the 2017 Operating Agreement states, "if any dispute shall arise between the Interest Holders as to their rights or liabilities under this Agreement, the dispute shall be exclusively determined, and the dispute shall be settled, by arbitration in accordance with the commercial rules of the American Arbitration Association." This section of the agreement then concludes in bold,

> EACH OF THE INTEREST HOLDERS HEREBY ACKNOWLEDGES THAT THIS PROVISION CONSTITUTES A WAIVER OF THEIR RIGHT TO COMMENCE A LAWSUIT IN ANY JURISDICTION WITH RESPECT TO THE MATTERS WHICH ARE REQUIRED TO BE SETTLED BY ARBITRATION AS PROVIDED IN THIS SECTION 18.7.

Commercial Arbitration Rule 7(a) of the AAA provides, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Similarly, the court in Raven Offshore reviewed an arbitration provision that provided arbitration to be conducted in accordance with the rules of the Maritime Arbitration Association of the United States, the question before the court was whether such a provision constituted

"clear and unmistakable evidence" of the parties' intent to delegate the issues of arbitrability to the arbitrator. 199 Wn. App. at 538-41. This court determined that such a provision is binding and delegates the threshold question of arbitrability to the arbitrator, not the trial court. Id. at 541-42. In Healy v. Seattle Rugby, LLC, this court recently reiterated that if the parties have a valid agreement to arbitrate, there is no risk that the parties will be forced to arbitrate a matter outside of that agreement. __ Wn. App. __, 476 P.3d 583 (2020). This court will not entertain the use of a gateway issue to circumvent arbitration. Id.

After concluding that the 2017 Operating Agreement was effective as to Woolley, the trial court concluded that there was a temporal limit on the issues to which it applied. However, once it was determined that the agreement was signed by and effective as to Woolley, the threshold question of arbitrability was no longer before the court based on the plain language of that agreement. As such, the scope of the arbitration, including any temporal or issue-based limits, are to be determined by an arbitrator.

Woolley advances no authority as to why the parties would not be bound to the AAA's commercial rules surrounding the threshold question of arbitrability expressly incorporated into the arbitration provision of the 2017 Operating Agreement. Further, Raven Offshore makes clear that such an agreement is binding in our state. As such, the trial court erred when it determined that, while the arbitration provision was signed and binding as to Woolley, the arbitrability of

certain claims should not be determined by the arbitrator. Accordingly, we reverse.[3]

Reversed.

WE CONCUR:

---

[3] Woolley renews his argument from the trial court in his response brief that the arbitration agreement is unconscionable. He has not cross-appealed the trial court's rejection of his unconscionability argument, so we decline to consider it on appeal. See RAP 10.3(b)