IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| POINT RUSTON, LLC; POINT RUSTON PHASE II, LLC; CENTURY CONDOMINIUMS, LLC; COPPERLINE CONDOMINIUM, LLC; and MC REAL ESTATE CONSULTANTS, LLC, | No. 57577-9-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| IGOR KUNITSA, an individual; LYUDMILA KUNITSA, an individual; and the marital community comprised of IGOR KUNITSA and LYUDMILA KUNITSA, | |
| Respondents. | |

MAXA, J. – Point Ruston, LLC (PR); Point Ruston Phase II, LLC (PR Phase II); Century

Condominiums, LLC (Century); Copperline Condominiums, LLC (Copperline); and MC Real

Estate Consultants, LLC (MC Construction[1]) (collectively, the Point Ruston companies) appeal

the trial court's grant of summary judgment in favor of Igor and Lyudmila Kunitsa in the Point

Ruston companies' lawsuit against them regarding their company's work on the Point Ruston

real estate development project (Project). The Point Ruston companies also appeal the trial

---

[1] MC Construction is the trade name for MC Real Estate Consultants, LLC. On appeal, they refer to themselves as MC Construction, and so we will refer to them as such.

court's submission of additional claims to arbitration. Only MC Construction seeks relief on appeal.

The Point Ruston companies are related entities involved with the Project. The late Michael Cohen was the manager of the Project. The Kunitsas are owners and employees of Serpanok Construction, Inc. (Serpanok), a concrete construction company. PR Phase II subcontracted with Serpanok to perform extensive work on two parts of the Project: Building 1A and the parking garage. Century later became the party in interest on the Building 1A contract. After Century and PR Phase II failed to pay for the work, Serpanok sued PR, PR Phase II, and Century for breach of contract. PR, PR Phase II, and Century asserted counterclaims, alleging that Serpanok committed fraud and participated in a "kickback" scheme with Larry Hutchinson, the former construction manager of the Project. Hutchinson was employed by MC Construction.

Pursuant to an arbitration clause in the subcontracts, the case was submitted to arbitration. The arbitrator ruled in favor of Serpanok on most of its claims, but also ruled that Serpanok caused Hutchinson to breach his fiduciary duty to PR, PR Phase II, and Century. The trial court confirmed the arbitration award.

While the arbitration was pending, the Point Ruston companies filed a separate lawsuit against the Kunitsas in their individual capacities. The Point Ruston companies asserted nearly identical claims regarding the Building 1A and parking garage subcontracts as the counterclaims PR, PR Phase II, and Century asserted in the Serpanok lawsuit, including aiding and abetting a breach of fiduciary duty and participating in common law fraud. The Point Ruston companies also asserted claims under other subcontracts. The trial court granted summary judgment in favor of the Kunitsas on the claims regarding the Building 1A and parking garage subcontracts

based on res judicata and collateral estoppel. The court stayed and transferred the remaining claims to arbitration. But when the arbitration was terminated because the Point Ruston companies failed to pay the arbitration fees, the trial court dismissed the remaining claims.

We hold that (1) res judicata bars MC Construction's claims against the Kunitsas regarding the Building 1A and parking garage subcontracts because MC Construction was in privity with PR, PR Phase II, and Century; (2) MC Construction is so closely related to the other Point Ruston entities that it was proper to compel them to arbitrate their remaining claims even though MC Construction was not a party to the Serpanok subcontracts; and (3) MC Construction provides no argument why the trial court erred in dismissing the remaining claims.

Accordingly, we affirm the trial court's grant of summary judgment in favor of the Kunitsas regarding the Building 1A and parking garage claims, the trial court's order referring MC Construction's remaining claims to arbitration, and the trial court's dismissal of the remaining claims.

FACTS

*Background*

The Point Ruston companies are entities involved with the Project. The Project includes condominiums, apartments, retail stores, businesses, restaurants, a movie theater, and parking facilities. Cohen was the manager of the Project. The Kunitsas are owners and employees of Serpanok, a concrete company, and they acted on behalf of Serpanok.

In 2014, PR Phase II entered into subcontracts with Serpanok to perform work on two parts of the Project: Building 1A and the parking garage. Both of the subcontracts contained an

3

arbitration clause. The clause provided that if disputes relating to the subcontract arose, the parties must resolve the dispute in arbitration.

After Serpanok started work on Building 1A, PR Phase II transferred title of the building to Century. Serpanok substantially completed its work on Building 1A in November 2015. At that time, Century owed Serpanok over $850,000, plus interest, for its work on Building 1A. In addition, PR Phase II owed Serpanok over $2.2 million for its work on the parking garage.

Serpanok filed suit against PR, PR Phase II, Century, and Cohen. Serpanok asserted several claims, including breach of contract, tortious conversion of some of Serpanok's equipment by PR Phase II and Cohen, enforcement of a mechanics lien on Building 1A, and a claim on promissory notes PR executed related to Building 1A and the parking garage.

PR, PR Phase II, Century, and Cohen asserted counterclaims alleging that Serpanok perpetuated a fraud with Hutchinson, the former construction manager for the Project. They claimed that Serpanok made secret payments to Hutchinson in exchange for approving false invoices, favorable contract terms, and unwarranted change orders to benefit Serpanok and to the detriment of their companies. They argued that they relied on the fraud and suffered damages. Finally, they alleged that Serpanok aided and abetted Hutchinson's breaches of fiduciary duties owed to them, tortuously interfered with their business expectancy, and violated the Securities Act of Washington (SAW), chapter 21.20 RCW, by entering into the promissory notes for Building 1A and the parking garage without prior disclosure of the fraud. In the alternative, PR, PR Phase II, Century, and Cohen argued that Serpanok breached the subcontracts at issue.

The parties litigated the validity of the arbitration clauses and the arbitrability of their claims before the trial court. The trial court ruled that the arbitration clauses were valid and that all of Serpanok's claims were arbitrable.

*Brewer Arbitration*

In March 2019, the parties selected Thomas Brewer to serve as their arbitrator. After the preliminary arbitration hearing, Serpanok argued that MC Construction and Copperline, along with other related nonparties, should not be able to assert claims or counterclaims in the arbitration. Brewer stated in his arbitration award that no claims or counterclaims by nonparties, including MC Construction and Copperline, had been asserted in the arbitration.

In June 2019, PR, PR Phase II, Century, and Cohen moved in the trial court to allow intervention by MC Construction and to consolidate the arbitration proceedings with separate arbitration proceedings between MC Construction and Hutchinson. The trial court denied their motion to intervene as untimely. The court also denied their request to consolidate because the parties did not meet the statutory requirements for consolidation set forth in RCW 7.04A.100.

In October 2019, Brewer issued the final arbitration award, which was lengthy and detailed. He ruled that Serpanok proved its claims based on the subcontracts, promissory notes, and the mechanic's lien on the parking garage. Brewer denied Serpanok's claims on the Building 1A lien and for tortious conversion.

Regarding the counterclaims, Brewer denied PR, PR Phase II, Century, and Cohen's counterclaim alleging common law fraud. However, he ruled that they established their counterclaim alleging that Serpanok aided and abetted breaches of fiduciary duty by Hutchinson, albeit for a smaller amount of damages than those sought. He also granted their counterclaim for

improper filing of the Building 1A lien. In addition, Brewer ruled that Serpanok committed an act of spoliation of evidence and other discovery abuse during arbitration. He denied all other counterclaims.

Brewer awarded Serpanok $852,740 for its claims against PR Phase II and Century under the Building 1A subcontract, plus $367,019 in pre-award interest. He awarded Serpanok $2,236,847 on its claims against PR Phase II under the parking garage subcontract, plus $1,189,456 in pre-award interest. In total, Serpanok was awarded $4,646,062.

Brewer awarded Century $394,116 for Serpanok's improper filing of the lien on Building 1A, and an additional $87,754 for bond costs incurred. In total, Century was awarded $481,870. Brewer awarded $311,894 to PR, PR Phase II, and Century on their aiding and abetting fiduciary duty claim, and an additional $500,000 in sanctions against Serpanok for spoliation.

In March 2020, the trial court entered final judgment confirming the arbitration award. This included a judgment of $5,003,370.09 against PR Phase II, $732,444.01 against Century, $2,470,449.69 against PR, and a mechanics' lien foreclosure judgment of $3,281,135 against PR Phase II. The court ruled that PR, PR Phase II, and Century were jointly and severally liable.

PR, PR Phase II, and Century appealed the trial court's judgment to this court. Separately, they appealed the trial court's order allowing Serpanok to foreclose on the parking garage's mechanics' lien. This court consolidated the cases and affirmed the trial court's orders. *Serpanok Constr. v. Point Ruston, LLC*, 19 Wn. App. 2d 237, 495 P.3d 271 (2021), *review denied,* 199 Wn.2d 1006 (2022).

6

*Lawsuit Against Kunitsas*

In March 2019, while the Brewer arbitration was pending, PR, PR Phase II, Century, and MC Construction filed a lawsuit against the Kunitsas individually. The complaint alleged that the plaintiffs were "related legal entities." They alleged that (1) the Kunitsas violated the SAW by forcing PR to execute promissory notes in favor of Serpanok; (2) Igor[2] intentionally interfered with their contractual relations by making secret payments to Hutchinson to induce him to approve false invoices and improper change orders, among other things; (3) Igor committed common law fraud by submitting false invoices and failing to disclose the relationship between Serpanok and Hutchinson; (4) Igor aided and abetted Serpanok's common law fraud; and (5) Igor aided and abetted a breach of fiduciary duty and the duty of good faith when he encouraged Hutchinson to violate his duties to the Point Ruston companies.

In May 2020, two months after the trial court entered the final judgment and decree from the Brewer arbitration, PR, PR Phase II, Century, and MC Construction filed an amended complaint against the Kunitsas. They added Copperline as a plaintiff and dropped MC Construction from their claim of aiding and abetting breach of the duty of good faith and fair dealing. They also dropped their SAW claim, and added claims of unjust enrichment, constructive trust, violation of the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW, and conversion. The plaintiffs referred to themselves as the Point Ruston companies, and most of the actions described in the amended complaint were alleged to have been performed by the Point Ruston companies without differentiating between the individual companies.

---

[2] To avoid confusion, the Kunitsas will be referred to individually by their first names. No disrespect is intended.

Regarding the new claims, the Point Ruston companies alleged that (1) Igor knowingly received and retained benefits from Hutchinson, including information relating to competitors' bids, and that they were entitled to restitution and disgorgement of those benefits; (2) Igor knowingly received benefits from Hutchinson and that they were entitled to the institution of a constructive trust to disgorge the profits and benefits received; (3) Igor violated the UTSA by misappropriating the Point Ruston companies' trade secrets through his relationship with Hutchinson; and (4) Igor committed the tort of conversion by paying kickbacks to Hutchinson in order to induce Hutchinson to approve payments from the Point Ruston companies to Serpanok, in turn wrongfully acquiring the Point Ruston companies' funds.

The Kunitsas filed a summary judgment motion to dismiss all of the Point Ruston companies' claims that were asserted or assertible in the Brewer arbitration, arguing that they were barred by res judicata and collateral estoppel. Specifically, they argued that the persons and parties involved were identical for purposes of res judicata. They claimed that because the Kunitsas owned Serpanok and were Serpanok employees, they were in privity with Serpanok. And three of the plaintiffs – PR, PR II, and Century – were parties in the prior action. The Kunitsas also asserted that the Point Ruston companies' causes of action relating to Building 1A and the parking garage were identical to those raised in the Brewer arbitration. In the alternative, the Kunitsas argued that the elements of collateral estoppel applied.

In support of summary judgment, Igor submitted a declaration stating, "The plaintiffs are controlled by Michael Cohen. He oversees all work on the subcontracts at issue in this case and he writes the payment checks." Clerk's Papers (CP) at 174-75.

The Point Ruston companies opposed the summary judgment motion. They argued that the parties in this lawsuit and the Brewer arbitration were not identical, pointing out that the Kunitsas, MC Construction, and Copperline were not parties to the arbitration. They also argued that the causes of action were different than those in the Brewer arbitration because those claims were against Serpanok, not against the Kunitsas. Further, they argued that the subject matter of the claims was different because Brewer did not have jurisdiction over claims against the Kunitsas, nor did he have jurisdiction over claims regarding work on parts of the Project beyond the scope of the Building 1A or the parking garage subcontracts. Finally, they argued that the Kunitsas failed to establish that collateral estoppel barred their claims.

In their legal memorandum, the Point Ruston companies disputed the Kunitsas' assertion that they all were controlled by Cohen. But they did not submit a declaration from Cohen or anyone else stating that Cohen did not control all of the Point Ruston companies.

While the summary judgment motion was pending, the Kunitsas moved to stay the proceedings and refer to arbitration the Point Ruston companies' claims concerning three smaller subcontracts related to the Project.

In August 2020, the trial court granted the Kunitsas' summary judgment motion. The court dismissed the Point Ruston companies' claims relating to the Building 1A and parking garage subcontracts as barred by res judicata and collateral estoppel. The court ruled that "the plaintiffs and defendants were a party, or in privity with a party, to the [Brewer] [a]rbitration." CP at 922. The court also dismissed Copperline's back-charge claim and MC Construction's claims for intentional interference and aiding and abetting breach of a fiduciary duty based on res judicata and collateral estoppel.

9

In addition, the trial court granted the Kunitsas' motion to compel arbitration. The court stayed and referred to arbitration the Point Ruston companies' claims relating to the three smaller subcontracts.

*Smith Arbitration*

The arbitration regarding the three subcontracts was assigned to arbitrator Steven Smith through the American Arbitration Association (AAA). In February 2021, Smith stayed the outstanding claims regarding the three subcontracts pending this court's review of the Brewer final arbitration award and trial court's judgment.

On March 26, 2021, the AAA contacted the Point Ruston companies for failure to pay their arbitration fees. On March 31, the AAA again contacted the Point Ruston companies and stated that "although this matter is currently stayed, it nevertheless remains subject to suspension and/or termination for non-payment." CP at 1084.

On May 20, Smith suspended the arbitration due to nonpayment. On June 25, Smith terminated the arbitration due to nonpayment. In November 2021, AAA filed suit against the Point Ruston companies to collect the unpaid fees. Eventually, AAA secured payment of the fees and its lawsuit was dismissed.

*Dismissal of Kunitsas Lawsuit*

In September 2022, the Kunitsas moved pursuant to CR 41 to dismiss the Point Ruston companies' remaining claims. They argued that the court should dismiss the case either for want of prosecution due to the Point Ruston companies' failure to pay the arbitration fees or for failure to comply with the court's arbitration referral.

The trial court granted the Kunitsas' motion to dismiss. The Point Ruston companies moved for reconsideration, requesting that the court modify the dismissal to be one "without prejudice." CP at 1215-117. The court denied the motion.

The Point Ruston companies filed a notice of appeal of the summary judgment order, the arbitration order, the CR 41 order of dismissal, and the denial of the motion for reconsideration. However, only MC Construction seeks relief on appeal.

## ANALYSIS

A. JUDICIAL NOTICE OF PLEADINGS OUTSIDE THE RECORD

Initially, MC Construction asks us to take judicial notice of Serpanok's and Hutchinson's opposition to a motion that Cohen, PR Phase II, Century, and MC Construction filed in the trial court in the Serpanok lawsuit to allow MC Construction leave to intervene in the Brewer arbitration and to consolidate that arbitration with the separate Hutchinson arbitration. These pleadings were not brought to the attention of the trial court and were not considered when the trial court granted summary judgment. We decline to take judicial notice of these pleadings.

RAP 9.12 states, "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." However, under RAP 9.11(a) we have authority to supplement the appellate record if the movant meets the following criteria:

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse the party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

Materials outside the record will be allowed under RAP 9.11(a) only under extraordinary circumstances. *E. Fork Hills Rural Ass'n v. Clark County.*, 92 Wn. App. 838, 845, 965 P.2d 650 (1998).

MC Construction has failed to provide any argument to justify supplementing the record pursuant to RAP 9.11(a). Therefore, we decline to consider these materials under RAP 9.11(a).

MC Construction filed a motion requesting that we take judicial notice of these pleadings under ER 201. Courts on appeal may take judicial notice of the record from proceedings " 'engrafted, ancillary, or supplementary to' " the case presently before the court. *Eugster v. Wash. State Bar Ass'n,* 198 Wn. App. 758, 795, 397 P.3d 131 (2017) (quoting *Spokane Rsch & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 98, 117 P.3d 1117 (2005)). However, RAP 9.11(a) generally applies in addition to the normal judicial notice standard. *Spokane Rsch.*, 155 Wn.2d at 98; *see also King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 549 n.6, 14 P.3d 133 (2000) ("Even though ER 201 states that certain facts may be judicially noticed at any stage of a proceeding, RAP 9.11 restricts appellate consideration of additional evidence on review.")

Again, MC Construction does not address the requirements in RAP 9.11(b) or explain why we should take judicial notice even though the RAP 9.11(a) requirements are not satisfied. Therefore, we decline to take judicial notice of the pleadings from the Serpanok lawsuit.[3]

---

[3] In any event, even if we did take judicial notice of these pleadings, MC Construction has provided no argument explaining why the pleadings would change the result of this appeal.

B.      APPLICATION OF RES JUDICATA

MC Construction argues that the trial court erred by granting summary judgment in favor of the Kunitsas regarding the Building 1A and parking garage subcontracts because res judicata does not apply.  We disagree.

1.    Summary Judgment Standard

We review summary judgment orders de novo.  *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022).  We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences from the evidence.  *Id*.  Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Id*.  A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue.  *Id*.  But summary judgment can be determined as a matter of law if the material facts are not in dispute.  *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 325, 519 P.3d 953 (2022).

2.    Legal Principles

"Res judicata precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits."  *Weaver v. City of Everett*, 194 Wn.2d 464, 480, 450 P.3d 177 (2019).  Stated differently, res judicata applies "when a plaintiff's claim against a party has been dismissed by final judgment in one action and the plaintiff asserts the same claim against the same party in a subsequent action."  *Shandola v. Henry*, 198 Wn. App. 889, 902, 396 P.3d 395 (2017) (emphasis omitted).

The threshold requirement of res judicata is a final judgment on the merits in the first action. *Penner v. Cent. Puget Sound Reg'l Transit Auth.*, 25 Wn. App. 2d 914, 924, 525 P.3d 1010, *review denied,* 1 Wn.3d 1026 (2023). Res judicata then applies if the first action and the second action involve the same (1) persons and parties, (2) quality of the persons for or against whom the claim is made as those in the prior judgment, (3) subject matter, and (4) cause of action. *Id.*

We review de novo the application of res judicata. *Id.* at 923.

3. Res Judicata Analysis

a. Same Persons and Parties

Regarding the first requirement, the general rule is that "for a party to be the same persons or parties for res judicata purposes, they must have the same identities as the parties from the previous litigation." *Id.* at 925. However, "[t]he rule of identity of parties does not demand that each party be a named party in both proceedings." *Eugster*, 189 Wn. App. at 787. "Different defendants constitute the same party for res judicata purposes if they are in privity." *Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d 214, 224, 164 P.3d 500 (2007).

Privity can exist in three contexts potentially relevant here. First, the owner of a closely held corporation generally is in privity with the corporation. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 59(3) (AM. L. INST. 1982). Similarly, an employee and the employer are in privity with each other. *Eugster*, 189 Wn. App. at 787; *Ensley v. Pitcher*, 152 Wn. App. 891, 902, 222 P.3d 99 (2009).

Second, "[a] nonparty is in privity with a party if that party adequately represented the nonparty's interest in the prior proceeding." *Feature Realty*, 161 Wn.2d at 224.

Third, " '[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.' " *Afoa v. Port of Seattle*, 191 Wn.2d 110, 132, 421 P.3d 903 (2018) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 39).

Here, the Kunitsas were not parties to the Serpanok lawsuit. However, as owners and employees they were in privity with Serpanok. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 59(3); *Eugster*, 189 Wn. App. at 787. Therefore, they can benefit from res judicata based on the Serpanok judgment.

MC Construction also was not a party to the Serpanok lawsuit. The issue is whether MC Construction was in privity with the parties to that lawsuit: PR, PR Phase II, Century, and Cohen. We conclude that MC Construction was in privity with those entities.

The key fact is that Cohen controlled all of the Point Ruston companies, including MC Construction.[4] Igor alleged this fact in his summary judgment declaration. Although the Point Ruston companies challenged this allegation in their trial court briefing, they submitted no contrary evidence. On appeal they claim that Igor's declaration was self-serving. But the fact that a party's undisputed testimony may benefit that party and is therefore "self-serving" does not render that testimony invalid. *See Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 221-23, 522 P.3d 80 (2022).

---

[4] The Kunitsas suggest that "MC" refers to Michael Cohen.

In addition, all the claims in the Serpanok lawsuit and all the claims in the Kunitsas lawsuit arise from the same common core – the fraudulent scheme engineered by Igor and Hutchinson.  That scheme allegedly injured all the Point Ruston companies, including MC Construction.  As result, there is no indication in the record that the interests of MC Construction diverged in any way from the interests of PR, PR Phase II, Century, and Cohen in the Serpanok lawsuit.

Because the same person controlled MC Construction, as well as the other three companies, and the interests of all the companies were adequately represented in the Serpanok lawsuit, we conclude that MC Construction was in privity with PR, PR Phase II, Century, and Cohen.  *See Feature Realty*, 161 Wn.2d at 224.

In addition, because Cohen controlled all the Point Ruston companies, he necessarily controlled the conduct of the litigation in the Serpanok lawsuit.  This also means that MC Construction – through Cohen – essentially participated in the Serpanok lawsuit.  This constitutes another basis for concluding that MC Construction was in privity with PR, PR Phase II, Century, and Cohen.  *See Afoa*, 191 Wn.2d at 132.

> b.    Same Quality of Persons For or Against Whom the Claim is Made

The second element requires that the court determine which parties in the second lawsuit are properly bound by the first judgment.  *Ensley*, 152 Wn. App. at 905.  All parties to the first litigation, plus all parties in privity with those parties, are bound to the first judgment.  *Id*.  "Quality of persons refers to the role the parties are assuming for the current litigation."  *Matter of Recall of Fortney*, 199 Wn.2d 109, 125, 503 P.3d 556 (2022).

MC Construction is in privity with the other Point Ruston companies and Cohen, who were defendants in the Serpanok lawsuit. MC Construction also sits in the same position against the Kunitsas as the other Point Ruston companies did against Serpanok in the prior litigation. As such, MC Construction may properly be bound by the first judgment involving the other Point Ruston companies.

MC Construction argues that no claims between the Kunitsas and MC Construction have ever been adjudicated on the merits. While true, that fact elevates form over substance. Cohen managed and oversaw all of the Point Ruston companies, and MC Construction was in privity with Cohen and the other Point Ruston companies. Accordingly, we hold that MC Construction is properly bound by the first judgment against PR, PR Phase II, and Century.

        c.    Same Subject Matter

The law does not precisely define how much the subject matter in the first and second lawsuits need to align for res judicata purposes. *Eugster*, 198 Wn. App. at 787. The subject matter in the Brewer arbitration was about the parties' obligations under the Building 1A and parking garage subcontracts for work on the Project. This case involves nearly identical claims arising out of those same subcontracts. Because the claims in the two actions are so similar, we hold that the claims involving the Building 1A and parking garage subcontracts have the same subject matter as those claims raised in the Brewer arbitration.

In the Brewer arbitration, PR, PR Phase II, Century, and Cohen raised three categories of counterclaims: (1) they alleged that Serpanok perpetuated a fraud with Hutchinson, (2) they argued that Serpanok aided and abetted Hutchinson's breach of fiduciary duty and that Igor tortuously interfered with their contractual relations with Hutchinson, and (3) they alleged that

Serpanok failed to disclose their payments to Hutchinson, and demanded that Serpanok disgorge any profits earned and return any "kickbacks" allegedly received,

In the suit against the Kunitsas, the Point Ruston companies raised three categories of claims: (1) Igor committed and aided and abetted Hutchinson to commit common law fraud, (2) Igor intentionally interfered with their contractual relations with Hutchinson, and aided and abetted Hutchinson's breach of fiduciary duty, and (3) Igor was unjustly enriched by his arrangement with Hutchinson, a constructive trust should be created to disgorge Igor of his improperly earned profits, Igor violated the UTSA, and Igor committed conversion by improperly keeping the Point Ruston companies' money,

The claims that PR, PR Phase II, Century, and Cohen raised in the Serpanok lawsuit deal with the same subject matter as the claims related to Building 1A and the parking garage raised by the Point Ruston companies in the instant case: claims alleging fraud, Hutchinson's breach of fiduciary duty, and money that Serpanok and Igor improperly received as a result of their "kickback" scheme with Hutchinson. Accordingly, we conclude that the claims raised in this case deal with the same subject matter as those claims raised in the Brewer arbitration.

d. Same Cause of Action

Courts consider four factors to determine whether two causes of action are identical for res judicata:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arose out of the same transactional nucleus of facts.

*Eugster*, 198 Wn. App. at 788-89. All four elements are not required to be present. *Id.* at 789.

Here, Serpanok's rights under the prior judgment would be impaired by prosecution of this second action against the Kunitsas. This case involves substantially the same evidence as the evidence involved in the first case. The suits involve infringement of the same rights. MC Construction claims, as PR, PR Phase II, Century, and Cohen did in the Serpanok lawsuit, that the Kunitsas interfered with their contractual relations and otherwise harmed MC Construction through their relationship with Hutchinson.

Finally, the two cases arise out of the same transactional nucleus of facts: namely, Serpanok's relationship with Hutchinson and the ways in which that relationship interfered with the parties' work on the Building 1A and parking garage subcontracts.

e.    Summary

We conclude that MC Construction's claims related to Building 1A and the parking garage involve the same persons or parties, qualities of persons involved, subject matter, and cause of action. Therefore, res judicata bars those claims.

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the Kunitsas regarding the Building 1A and parking garage claims based on res judicata.[5]

C.    ARBITRATION OF REMAINING CLAIMS

MC Construction argues that there was insufficient privity between MC Construction and the Kunitsas with the other parties to the arbitration to justify the trial court's order of arbitration

---

[5] Because we affirm the trial court based on res judicata, we need not address the Kunitsas' alternative argument that collateral estoppel also bars MC Construction's claims.

of their remaining tort claims against the Kunitsas regarding the three additional subcontracts.
We disagree.

1.    Legal Principles

Arbitration is a matter of contract.  *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46, 470 P.3d 486 (2020).  Parties can only be compelled to arbitrate if they agreed to do so. *Evanston Ins. Co. v. Penhall Co.*, 13 Wn. App. 2d 863, 876, 468 P.3d 651 (2020).  However, nonparties to an arbitration provision may be bound to arbitrate if principles of agency or contract law compel such a result.  *Id.*  A nonsignatory may be compelled to arbitrate if they are related to the parties through agency theory.  *Id.*  For example, if the court finds that a party is an agent of one of the signatories to the agreement, the court may compel the agent to arbitrate. *Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*, 199 Wn. App. 534, 541-42, 400 P.3d 347 (2017) (nonsignatory bound by agreement when they allegedly acted for and on behalf of a party to the contract).

We review a trial court's decision to compel arbitration de novo.  *Wiese v. Cach*, *LLC*, 189 Wn. App. 466, 473, 358 P.3d 1213 (2015).  Washington's public policy strongly favors arbitration.  *Burnett*, 196 Wn.2d at 46.

2.    Analysis

At trial, MC Construction raised claims that arose under three additional subcontracts between Serpanok and PR, Copperline, and Century.  CP 14-15.  These subcontracts contained the same arbitration clauses as the Building 1A and parking garage subcontracts.  In relevant part, the arbitration clauses in the three subcontracts stated, "In the event of a dispute *concerning this Agreement*, its meaning or enforcement, such disputes shall be submitted to a single

arbitrator." CP at 681 (emphasis added). The trial court referred the claims regarding the three additional subcontracts to arbitration pursuant to the arbitration clauses in the subcontracts.

MC Construction's claims clearly "concern" the three additional subcontracts. They relate to Igor's conduct with Hutchinson in carrying out those subcontracts, and how that conduct allegedly harmed MC Construction. In addition, as stated above, the Kunitsas were in privity with Serpanok and MC Construction was in privity with PR, Copperline, and Century. Therefore, we conclude that it is appropriate for the arbitration clauses to apply to MC Construction's claim regarding the subcontracts.

Accordingly, we affirm the trial court's order staying and referring to arbitration MC Construction's remaining claims.

D.      DISMISSAL OF REMAINING CLAIMS

The trial court dismissed the remaining claims because the arbitration regarding those claims was terminated for nonpayment of fees. Although MC Construction assigns error to this dismissal, it presents no argument as to why the trial court erred in dismissing the remaining claims. We generally decline to consider an issue when the appellant has failed to provide meaningful argument. *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 21, 408 P.3d 1123 (2017). Therefore, we affirm the trial court's dismissal of these claims.

E.      ATTORNEY FEES UNDER RAP 18.9

The Kunitsas request an award of attorney fees on appeal under RAP 18.9(a), arguing that MC Construction's appeal is frivolous. We decline to award attorney fees to the Kunitsas.

RAP 18.9(a) authorizes the appellate court to impose attorney fees as sanctions if a party "files a frivolous appeal." An appeal is frivolous if, considering the entire record, we determine

21

that the appeal presents no debatable issues and is completely without merit. *Wash. Election Integrity Coal. United v. Schumacher,* ___ Wn. App. 2d ___, 537 P.3d 1058, 1073-74 (2023). Simply because an appeal lacks merit does not mean that sanctions are appropriate. *Id.* "Any doubts as to whether an appeal is frivolous should be resolved in favor of the appellant." *Id.*

We conclude that this appeal is not frivolous. Although we are not persuaded by MC Construction's arguments, they are not so completely without merit as to be frivolous. Therefore, we deny the Kunitsas' attorney fee request.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the Kunitsas regarding the Building 1A and parking garage claims, the trial court's order referring to arbitration MC Construction's remaining claims to arbitration, and the trial court's dismissal of the remaining claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, A.C.J.

PRICE, J.

22